[Sac. No. 17.  In Bank.—June 24, 1897.]

IN THE MATTER OF THE ORGANIZATION AND OF THE BONDS OF THE CENTRAL IRRIGATION DISTRICT.

IRRIGATION DISTRICT—CONFIRMATION ACT—SPECIAL PROCEEDINGS—AMEND-MENT OF WRIGHT ACT—LIMITATION OF ACTION OR DEFENSE—STATU-TORY CONSTRUCTION.—The confirmation act of 1889, supplemental to the Wright act, forms no part of that statute, and is not amendatory. thereof, but is an independent statute, providing special proceedings, in which the aid of the court may be invoked to secure evidence and determine whether a particular district has been duly organized and its bonds regularly issued, and the amendment of section 3 of the Wright act in 1891, providing that "no action shall be commenced or maintained, or defense made affecting the validity of the organization, unless the same shall have been commenced or made within two years" after the making and entering of the order of the board of supervisors declaring the territory duly organized, does not apply to a special pro-ceeding instituted by the board of directors under the confirmation act.

ID.—"ACTION" DISTINGUISHED FROM "SPECIAL PROCEEDING."—The term "special proceeding" is used in contradistinction to the term "action," and any proceeding in a court which was not under the common law and equity practice either an action at law or a suit in chancery, is a special proceeding.

ID.—RES ADJUDICATA—FORMER DECISION UPON VALIDITY OF ORGANIZATION—PROPOSITIONS NOT DETERMINED.—A former decision of this court in another cause in favor of the validity of the organization of an irriga-tion district, as against certain specified objections thereto, is not *res adjudicata* as to propositions not presented or considered by the court in that case, which are urged for the first time in another proceeding between different parties.

**ID.**—DETERMINATION OF FACTS BY SUPERVISORS NOT FINAL—REVIEW UNDER CONFIRMATION ACT.— The doctrine that where the jurisdiction of an inferior tribunal is dependent upon facts which it is required to ascertain and settle by its decision, such decision is conclusive, has no application to the finality of the decision of the board of supervisors as to facts respecting the validity of the organization of an irrigation district, the proceeding established by the confirmation act being expressly directed to be had to review the determination of the board of supervisors.

**ID.**— WRIGHT ACT CONSTITUTIONAL. — The irrigation act, known as the Wright act, is neither violative of the constitution of this state nor of the constitution of the United States; and the decision of the supreme court of the United States, together with the previous decisions of this court, conclusively adjudicate the constitutionality of that act.

**ID.** — ORGANIZATION OF DISTRICT — NOTICE OF MEETING — PUBLICATION BY PETITIONERS ESSENTIAL—MANDATORY STATUTE—JURISDICTION OF SUPERVISORS.—The statutory provision that a notice stating the time of the meeting at which the petition for the organization of an irrigation district will be presented, shall be published together with the petition, is mandatory, and its publication by the petitioners is an essential prerequisite to conferring jurisdiction upon the board of supervisors to proceed in the matter of the organization, and is the process by which the property owners to be affected are notified and given an opportunity to present their objections to the board of supervisors; and the petitioners themselves are the only persons empowered by law to publish such notice, and it is not within the power of the supervisors to cause its publication.

**ID.**—UNAUTHENTICATED NOTICE INVALID—ACTUAL NOTICE IMMATERIAL—STATUTORY WARNING REQUIRED. — The published notice must bear upon its face a proper authentication that it is given by the petitioners; and the publication of a mere unsigned and unauthenticated notice is invalid; nor can the defect be cured by proof of actual notice or knowledge on the part of those to be affected thereby, but the statutory warning must be given, and must conform to the statutory requirements.

**ID.**—QUALIFICATION OF PETITIONERS—OWNERSHIP OF AGRICULTURAL LAND —DESIRE FOR IRRIGATION—IMPROVED TOWN LOTS.—Qualified signers to the petition for the organization of an irrigation district must be the *bona fide* owners of agricultural lands, desiring to improve the same by conducting water thereupon; and the owners of improved town lots who can have no desire to irrigate their lands within the meaning of the Wright act are not qualified to sign the petition.

**ID.**—ILLEGAL ORGANIZATION—VALIDITY OF BONDS—RIGHTS OF BONA FIDE PURCHASERS—QUESTIONS UNDETERMINED.—Where the organization of an irrigation district is held illegal and void, in a proceeding for the confirmation of its organization and of bonds issued thereby, and the bonds were issued prior to the proceedings for confirmation, and some of them were sold to *bona fide* purchasers, the right of purchasers of the bonds will not be determined, but will be left for determination in a proper action to which they can be made parties.

APPEAL from a judgment of the Superior Court of the County of Glenn and from an order denying a new trial. SETH MILLINGTON, Judge.

The facts are stated in the opinion of the court.

*George H. Maxwell, R. M. F. Soto, Garber, Boalt & Bishop,* and *R. A. Long,* for Appellants.

*Johnson & Johnson,* and *R. Percy Wright,* for Respondent.

HENSHAW, J.—This proceeding was instituted by the board of directors of the Central Irrigation District, under the provisions of an act of the legislature, commonly and for convenience designated the "Confirmation Act" (Stats. 1889, p. 212).

The petitioners, as the act provides they may do, set forth: 1. The proceedings leading to, and terminating in, the organization of the irrigation district; and, 2. The proceedings attending the issue and sale of bonds of the district, and asked that these proceedings be reviewed and declared valid and legal.

Certain persons interested in the district, and owning lands therein, appeared, and, by answer, contested the validity of the proceedings for the organization of the district, as well as the proceedings for the issue and sale of bonds. The findings of the court were in favor of the regularity and legality of all these steps and processes, and the judgment of the court followed accordingly. From that judgment, and from the order denying a new trial, disaffected property owners within the district prosecute these appeals.

One of the property owners, L. P. Drexler, appeared, and interposed to the inquiry as to the legality of the organization of the district a separate defense, to the effect that all such inquiry was barred by the provisions of section 3 of the act of March 7, 1887 (Stats. 1887, p. 30), as amended by the act of March 20, 1891 (Stats. 1891, p. 143).

If this defense of Drexler is well made, it not only relieves from the necessity of considering appellants' attack upon the validity of the organization of the district, but, indeed, forbids such consideration. A determination upon this defense then lies at the threshold of the inquiry.

The so-called irrigation act, or Wright act, was approved March 7, 1887. (Stats. 1887, p. 39.) In 1889, the legislature passed an act which, while entitled an act "supplemental" to the Wright act, in law forms no part of that statute. It was an act creating a special proceeding for the determination of the questions enumerated in the act itself. It was a special proceeding authorized to be instituted by but a single class of persons, viz., the boards of directors of irrigation districts, whereby these boards of directors, on behalf of their districts, could demand determination of the question, whether the proceedings relative to the organization, as well as the proceedings relating to the proposed or actual issue and sale of bonds, were due and legal.

Under section 5 of this confirmation act, that no question might arise as to its scope or as to the powers of the court in determining the questions which might arise, it is especially provided that the court shall have jurisdiction "to examine and determine the legality and validity of, and approve and confirm each and all of the proceedings for the organization of said district, under the provisions of said act, from and including the petition for the organization of the district, and all other proceedings which may affect the legality or validity of said bonds, and the order for the sale and the sale thereof." The rules of pleading and practice not inconsistent with the provisions of the act are made applicable to proceedings under it, and appeals are authorized from the judgment and from the order denying a new trial, saving that such appeals must be taken within ten days from the entry of the order or judgment. This confirmation act neither in terms nor in effect amends any of the provisions of the Wright act. It is an independent

CXVII. Cal. —25

statutory enactment embraced in seven separate and distinct sections, together forming, as the act itself designates it, a special proceeding, having reference, it is true, to the Wright act, but no more amendatory thereof than would be the special proceedings of *certiorari* or *mandamus*. It has no bearing upon nor dealings with the matter of the organization of irrigation districts, but provides exceptional and peculiar machinery by which the aid of the courts may be invoked to secure evidence and to determine whether a particular district has been duly organized and its bonds regularly issued. (*Tregea* v. *Modesto Irr. Dist.*, 164 U. S. 179; *Crall* v. *Poso Irr. Dist.*, 87 Cal. 140; *Rialto Irr. Dist.* v. *Brandon*, 103 Cal. 384.)

In 1891 the legislature passed an act which, by its title and by its terms, purported to, and in fact did, amend the Wright act of 1887. (Stats. 1891, p. 142.) In amending section 3 of the original act there was inserted the following: "And no action shall be commenced or maintained, or defense made affecting the validity of the organization, unless the same shall have been commenced or made within two years after the making and entering of said order." "Said order" is the order of the board of supervisors entered upon its minutes and declaring the territory duly organized as an irrigation district.

The Central Irrigation District was organized in December, 1887. This proceeding was instituted in 1893.

Whatever effect the act of 1891 may have to cut off rights of action or defenses which before its enactment were available to objecting land holders within an irrigation district in any action prosecuted by them, or by way of defense to any action prosecuted against them, we are not here called upon to consider; for it is plain that this provision of the act of 1891 was not designed to curtail the rights of boards of directors to seek a determination of the legality of the organization of their districts under the confirmation act, nor to abridge the

jurisdiction of the court to decide these questions, a jurisdiction expressly and solemnly conferred therein; and it would be the merest stultification to hold that while the directors of an irrigation district might seek and obtain a judgment of a court declaring that their district was legally organized under a proceeding inviting all interested to appear and attack that organization, nevertheless no defense could be made by any one touching upon the legality of the acts and proceedings for organization. Such procedure would partake neither in form nor in essence of the nature of a judicial determination. It would be equivalent to a pretended judicial process commanding a man to come and be heard, and upon his appearance denying him a hearing. The confirmation act treats of a *special proceeding;* the act of 1861, of an *action.* The distinction between the two is well recognized. "The term 'special proceeding' is used in the codes of practice of many of the states in contradistinction to 'action.' It may be said, generally, that any proceeding in a court which was not under the common law and equity practice either an action at law or a suit in chancery is a special proceeding." (1 Ency. of Pl. & Pr. 112; Code Civ. Proc., secs. 22, 23.)

Without, therefore, stopping to consider just what meaning is to be attached to the amendatory provision of the statute of 1891, we hold that it has no application to proceedings instituted by boards of directors on behalf of their districts for confirmation of their organization, and of their bond issues under the act of 1889.

It is next insisted that inquiry upon all questions affecting the validity of the organization of the district is foreclosed by the decision of this court in *Central Irr. Dist.* v. *De Lappe,* 79 Cal. 351.

In that case the district brought *mandamus* against its secretary to compel him to sign and seal certain of its bonds. One of the property owners was allowed to intervene for the purpose of contesting the legality of the bond issue. Certain issues were joined touching the validity of the organization of the district. The

mandate was awarded, and an appeal taken. In its opinion and decision this court disposed of the objections presented adversely to appellants' contention, and, so far as concerns the propositions in that case advanced, it was indisputably an adjudication that they presented no valid legal objection to the organization of the district. But it does not follow therefrom that inquiry as to other matters is foreclosed, and that the judgment in the De Lappe case is *res judicata* upon questions not presented or considered in that case. Indeed, it may well be doubted whether in a different case with different parties, as is the present, the decision in the De Lappe case would be binding at all, or would have any other force than such as would be derived from the cogency of the reasoning and the weight to be given to an existing decision; but, however that may be, certain it is that it cannot be construed as a final and conclusive adjudication, or any adjudication at all, upon propositions not presented to and passed upon by the court; for, even in the same case, an appellate tribunal is bound by its prior decision only upon the points distinctly made and determined, and not at all upon points which might have been raised but were not. (*Balch* v. *Haas*, 73 Fed. Rep. 974; *Cross* v. *Burke*, 146 U. S. 82; *Union School Tp.* v. *Crawfordsville Bank*, 102 Ind. 464; *Haynes* v. *Trenton*, 123 Mo. 326.)

In this instance there is presented, not only another proceeding between different parties, but, in addition, the points to which our consideration is now directed are entirely different from those pressed to determination in the case of De Lappe.

The final objection to a review by this court of the proceedings attending the organization of the district is based upon the proposition that jurisdiction to determine these matters by legislative enactment has been vested in the board of supervisors, and that the decision of that tribunal is final and conclusive. This is an enunciation of the doctrine that where jurisdiction of even an inferior court is dependent upon a fact which

that court is required to ascertain and settle by its decision, such decision is held to be conclusive. (*Farmers' Bank* v. *Board of Equalization*, 97 Cal. 318.)

That doctrine, however, cannot here be invoked. The finality of the decision of such an inferior tribunal rests upon the further proposition that, either expressly or by failing to provide for a review of the decision of such inferior tribunal, the law effectually declares that by all other courts it is to be regarded as conclusive. Here, however, the legislature by the confirmation act has provided for a review under direct attack of these very steps and processes, and consequently for a review of the board's decision upon their regularity and validity. Any proceeding provided by the law for the purpose of avoiding or correcting a judgment is a direct attack, which will be successful on showing error. (*Lower King's River Rec. Dist.* v. *Phillips*, 108 Cal. 306; Van Fleet on Collateral Attack, 5.)

The proceeding established by the confirmation act is expressly directed to be had to review the determination of the board of supervisors, and therefore all claim of finality for the decision of the board must fall to the ground. *In re Madera Irr. Dist.*, 92 Cal. 296, 27 Am. St. Rep. 106, and *Fallbrook Irr. Dist.* v. *Abila*, 106 Cal. 355, 365—indeed, all of the cases which have arisen—recognize this to be the intent and scope of the confirmation act.

Under this disposition of respondent's preliminary objections, we are brought to the consideration of the points presented by appellants. Of these, the first attacks the irrigation act as violative both of the constitutions of the state and of the United States. But the decisions of this court, together with the decision of the United States supreme court handed down since this appeal was taken, form conclusive adjudications upon these propositions against the contention of appellants. (*Turlock Irr. Dist.* v. *Williams*, 76 Cal. 360; *Central Irr. Dist.* v. *De Lappe, supra; Crall* v. *Poso Irr. Dist., supra; Modesto Irr. Dist.* v. *Tregea*, 88 Cal. 334; *In re Madera*

*Irr. Dist., supra; Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112.)

The next contention of appellants is that the organization of the Central Irrigation District was illegal, because no sufficient notice was given as required by the irrigation act of the time of the presentation to the board of supervisors of the petition for the formation of the district. The irrigation act provides (section 2) that a petition, signed by the required number of freeholders of the proposed district, shall first be presented to the board of supervisors, accompanied with a good and sufficient bond. "Such petition shall be presented at a regular meeting of the said board, and shall be published for at least two weeks before the time at which the same is to be presented, in some newspaper printed and published in the county where said petition is presented, *together with a notice stating the time of the meeting at which the same will be presented."* The publication of this notice is an essential prerequisite to conferring upon the board of supervisors jurisdiction to proceed in the matter of the organization. It is by the terms of the act made mandatory that such notice should be given. The notice when given is the process by which the property owners to be affected are notified and given an opportunity to present their objections to the board of supervisors. The board of supervisors acts in the matter as a court of special and limited jurisdiction. "The condition (in the irrigation act) that the lands which in the judgment of the board are not benefited shall not be included, renders the determination of the board including them after a hearing *a judgment* that such lands will be benefited by the proposed plan of irrigation." (*Fallbrook Irr. Dist.* v. *Bradley, supra.*) The act does not in express terms declare by whom the notice is to be given, but it may be derived therefrom, by intendment as clear and explicit as though express language had been used, that the petitioners themselves are the persons, and the only persons, empowered to perform and charged with

the performance of this duty.   The petitioners are to present their petition at a regular meeting of the board, and only upon such presentation, after notice, does the board acquire official knowledge of the proposition, with power to act upon it.   But, before such petition is presented, it shall have been published for at least two weeks.   Clearly, it is not for the board of supervisors to cause the publication.   Its functions do not begin until after the publication has been completed.   The petitioners, then, and no others, are to give the notice.   "According to the theory of the common law, all power of judicature flowed from the crown, and courts had no power to compel a party to appear or to proceed to the determination of a cause until the king by his original writ had issued his command to the sheriff to summon the defendant before them. Here 'the state is the sovereign by whose power alone the citizen can be compelled to appear in its courts to answer an action brought against him.'   (*State* v. *Mc-Cullough*, 3 Nev. 210; *Curry* v. *Hinman*, 11 Ill. 420.) Hence, since the notice is in the nature of process to bring a party before a tribunal exercising judicial powers, it must be given by some one authorized by the state to give it.

"Notice, in the sense of the statute, does not mean knowledge.   Actual knowledge, or the want of it, cannot be shown.   It means the statutory instrumentality of knowledge; the formal process emanating from the source, and served in the manner, prescribed by the statute.   The advertisement is the process, and the posting in the public places is the service.   The notice, then, must be issued by persons authorized by law to issue it, and it seems clear that this fact must be shown on its face by proper authentication, as more formal process must show it.   No person can be summoned before a legal tribunal but in pursuance of law, and by persons authorized by law to summon him."   (*Minard* v. *Douglas County*, 9 Or. 206; *Williams* v. *Bergin*, 108 Cal. 166.)

It was shown that there were published for two weeks in the *Weekly Colusa Sun* the petition, with the names of the signers thereto, and immediately below this the following: "The foregoing petition will be presented to the honorable board of supervisors of Colusa county on Monday, October 10, 1887, at 10 o'clock A. M. of that day." The notice was unsigned. It did not bear upon its face any showing of authority. It did not appear from it that it was given by the petitioners, who alone could issue the process. Indeed, from all that is shown, the so-called notice may have been but the declaration of the editor of the newspaper, and the publication of the so-called notice may have been but the statement in the paper of a bit of news. It is essential to the validity of a notice that it shall bear upon its face evidence that it has been given by the person authorized so to do, and this evidence is shown by the signature of the officer or other person charged with the duty. Nor can the defect in the notice be cured by proof of actual knowledge upon the part of those to be affected thereby. The statutory warning must be given, and must conform to the statutory requirements. (*Gunter* v. *Fayetteville*, 56 Ark. 202.)

It is well said in *People* v. *Bennett*, 29 Mich. 451, 18 Am. Rep. 107: "There can be no judicial action affecting rights which is not based upon some process or notice whereby the parties interested are subject to the jurisdiction and entitled to be heard. There is no rule of law which requires persons to attend and watch the action of courts, unless the legal course has been taken to warn them, and there is no principle of law which would tolerate action upon the fullest notice where the party notified is denied a hearing. Notice is only useful to enable him to obtain a hearing."

In *Niles* v. *Ransford*, 1 Mich. 338, 51 Am. Dec. 95, mortgaged premises were advertised by the mortgagee to be sold under a power of sale in the mortgage, and the mortgagee afterward and before the day of sale assigned the mortgage to a third person, who continued

the advertisement in the mortgagee's name instead of advertising anew as assignee in his own name. The sale was held irregular and void, and not a bar to the mortgagor's equity of redemption. In discussing the essentials to a valid notice the court say: "It is urged that the notice of sale is not required by the statute to be signed by anyone, but no conception can be formed of a *legal notice* which does not disclose on its face that it emanates from some person or court claiming to have the power to act in the manner indicated by the notice. It is this that gives to it its force, that makes it a notice. The statute does not prescribe the form of the notice; it declares that a notice shall be given in which certain matters shall be specified. It does not regulate its form in other respects."

A similar case is that of *Bausman* v. *Kelley*, 38 Minn. 197, 8 Am. St. Rep. 661, and it is there said: "Again, the notice was not upon its face, and did not purport to be, the act of Galusha, but of Hall, the mortgagee. It is an essential quality of a notice that it appear to be given by competent authority, and a notice which upon its face is declared to be the act of a. designated person, and° which as such would be void, cannot be made effectual by proof that it was really the act of another and undisclosed person. A notice by a mere stranger can effect nothing." To like effect is the case of *Roche* v. *Farnsworth*, 106 Mass. 509.

In *McVichie* v. *Knight*, 82 Wis. 137, the statute required the calling of an election to vote upon the proposed issuance of municipal bonds. Notice of the election was to be given by the town clerk. The notice in fact was given, and was signed "Thomas Huddleston," without official designation, but in truth Thomas Huddleston was the town clerk. The court held the notice to be defective, saying that it was not signed by any person as town clerk, and therefore did not show that it was given by the town clerk as the law required.

In *Eaton* v. *Supervisors*, 42 Wis. 317, the statute re-

quired a notice of appeal to be in writing. An unsigned notice under this statute was held to be insufficient.

In *Commonwealth* v. *Barrett* (Ky., Oct. 27, 1891), 17 S. W. Rep. 336, a condition in the statute provided that the law should become effective upon its approval by a majority of the voters of the county, at an election to be held on a designated date, after notice by the sheriff of the election published in three consecutive issues of the legal newspaper. The act and the notice were published. The published notice was not signed by the sheriff; and was held not to be a compliance with the act, as it was impossible for the voters to tell whether or not the notice was official, and the court said: "It was vital to the validity of the election. By necessary implication the notice should have been official. The act provided that the sheriff should give it. This meant that he should sign it."

In *Matter of Road Notices*, 5 Harr. (Del.) 324, the petition was for a new public road, and, on proof of the form of notice, it appeared that the written notice of intention to prefer the petition had no signature to it. On this objection being made, the court said the notice must be given by some one, and a paper without a signature could not be said to be a notice by anyone of his intention to present a petition, and they held a signature to the notice to be necessary.

In *Veeder* v. *Lima*, 19 Wis. 280, the supervisors of the town were authorized by law to subscribe for capital stock of a plank road company, but the question was first to be submitted to the electors of the town, upon the written application of ten or more electors, by the supervisors posting up ten days beforehand in at least five public places of the town notices of election for that purpose. The court, reviewing the action of the supervisors, said: "No affidavit or affidavits of the posting up of the notices were ever made, deposited, or recorded in the office of the town clerk. At most but two notices were posted, and even those, according to the

most sure and certain testimony of the witness Ballou, were not signed by the supervisors. These facts alone are sufficient to avoid the election."

In *Short* v. *State*, 79 Ga. 550, the well-settled rule is enunciated that the act of every public officer must bear upon its face evidence of its official character, and, therefore, where a tax *fieri facias* was issued and signed "William R. Smith," and it appeared neither by the addition of the word "tax collector" to his signature nor otherwise upon the face of the paper that he was tax collector, it was held not to be a legal process. To the same effect are the cases of *Spear* v. *Ditty*, 9 Vt. 282; *Taylor* v. *Burnap*, 39 Mich. 739; *Smith* v. *Hard*, 59 Vt. 13.

In *Minard* v. *Douglas County*, *supra*, there was under consideration the sufficiency of a notice of the application for laying out a highway, required by the statute to be given to interested parties. The proceedings contemplated by the Oregon statute were well nigh identical with the proceedings contemplated by the Wright act. A petition was to be presented, signed by the requisite number of freeholders, praying for the laying out and opening of a road. At the time of the presentation of the petition the statute required that it should be accompanied by satisfactory proof that notice has been given by advertisement, etc. The notice as given contained all the requisites of notice, saving that instead of being signed by the petitioners, it was signed "A. H. Kennedy, attorney for applicants." The supreme court of Oregon ably and elaborately considers the question of notice, reviews the authorities, and reaches the conclusion, with which we are in full accord, that it was the duty of the petitioners under the statute to give the notice, and that this duty was as effectually imposed by intendment as though it had been enjoined upon them by express words; that the notice given was to be in writing, and that the writing necessarily implied a signing and authentication in such unmistakable manner

as to carry on its face fair evidence of its character and authenticity.

In answer to this overwhelming weight of authority, respondents claim that in *Central Irr. Dist.* v. *De Lappe, supra,* this identical notice was upheld, and in *Modesto Irr. Dist.* v. *Tregea, supra,* a notice substantially the same was likewise approved. It is a sufficient answer to this to say that in neither of those cases was the question of the sufficiency of the form of the notice presented to the court for consideration, and the court's silence, as has been before said, upon a matter to which its attention was not directed, cannot be construed as a determination of the question.

It is further urged against the validity of the organization of the district that the petition for organization was not signed by the requisite number of qualified freeholders. The petition was signed by fifty-eight freeholders. It is insisted that of the fifty-eight, twenty-two were not qualified, because at the time they signed each of them was the owner merely of a town lot, or town lots, or small parcels of land scarcely larger than a lot, in either the town of Maxwell or the town of Williams, the lands whereof had been subdivided into blocks and lots. It can serve no useful purpose to review at length the evidence as to the real property owned by these twenty-two signers. In each case, however, there were upon part of the lands of these petitioners either dwelling-houses and outhouses, or stores, blacksmith shops, livery-stables, business houses, carpenter shops, etc. The lands of each of these signers were in fact town lots, and used for residence or business purposes. Upon some there were, as usual about country places, flowers, shrubs, and a few orchard trees. In *Modesto Irr. Dist.* v. *Tregea, supra,* objection was made to including within an irrigation district any lands within the limits of an incorporated city or town. The question which this court was called upon to determine was, whether it was beyond the power of the supervisors to include such lands under the provisions of the act au-

thorizing them so to do, in case the lands were susceptible of irrigation from a common source, etc., and would be *benefited*, and it was held that town lands susceptible of such irrigation were not necessarily without the purview of the law, but that the question whether in any particular case ·a town would or would not be benefited must remain a question of fact to be decided by the board of supervisors, to whose discretion it has been committed by the legislature; and, as to owners of town property whose lands may be covered with buildings, it is said that it seems reasonable to·assume that they must participate indirectly at least in the accruing benefits.

But this determination, as is pointed out in *Fallbrook Irr. Dist.* v. *Abila, supra,* is not to be taken as an adjudication that holders of small residence lots in towns and cities are such owners of land, within the meaning of the Wright act, as makes them qualified signers of the original petition for the organization of the district. This presents an entirely different question, and we unhesitatingly hold that they are not such qualified signers, within the spirit of that act. The Wright act contemplates the formation of irrigation districts to improve the condition of farming lands by bringing water upon them. As in reclamation districts the purpose is to improve the lands by carrying off the surplus water, so here it is to better the farming property by conveying the necessary supply of water to the soil. Where a statutory provision is open to construction, the test of the reasonableness of any given construction is what may be done with it. It is necessary, says Chief Justice Shaw, to put extreme cases to test the principle. Bearing· in mind that the purpose for which irrigation districts are permitted to be organized is for the improvement of agricultural lands, if it be held that owners of lots within incorporated cities or towns are qualified signers to the petition for their formation, then the machinery for the organization of such a district might be set in motion by fifty owners of small town

lots, either in part or wholly covered by residence and business houses. These fifty would embrace within the boundaries of their proposed district vast tracts of farming land, the owners of which might be to the last degree unwilling that such a district should be formed. By including also within the boundaries of their contemplated district the little town in which their lands were situated, they might easily, and probably would, at the election, outvote the opposing owners of the agricultural lands who might chance to be electors, and thus it would result that by the petition of townspeople only indirectly interested in the district, and by the vote of other townspeople not property owners at all, and therefore, at the most, very remotely concerned in the matter, thousands of acres of farming land, despite the protests of the owners, would be subjected to the burden and expense attending the organization and conduct of such districts. For it is a matter of common knowledge, and part of the history of the records of this court, that in some of these districts liens to the sum of forty and more dollars have been imposed upon every acre of land, despite the protests of its owners.

Such is not the meaning of the act, nor should an interpretation be given to it which would make such practices possible. Qualified signers to the petition must be the *bona fide* owners of agricultural land desiring to improve the same by conducting water upon it. To the use of the word "desire" employed by the statute some force must be given. It is unreasonable to suppose that a man whose lot is covered by a drugstore, another upon whose lot is a blacksmith shop and a corral, a third upon whose lot is a residence and the usual shrubs and bushes of a flower garden, *desire* to irrigate their lands in the sense of the word as employed in the Wright act.

The next objection of appellants, that the election held for the organization of the district was void because the proclamation for the election was not published by direction of the board of supervisors, is not open to

consideration.   The court's finding was in favor of the district, and appellants' bill of exceptions contains no specifications as to the insufficiency of the evidence upon this matter.

The principal objections of appellants yet remaining for consideration go to the question of the validity or invalidity of the bond issue, and herein it is insisted: 1. That all the bonds of the district are void, for the reason that notice of the bond election held on April 2, 1888, was not legally given or posted; 2. That all the outstanding bonds of the district, except twelve thousand five hundred dollars thereof, are void, for the reason that pursuant to the resolution of June 3, 1890, they were issued in place of and substituted or exchanged for bonds originally issued under the resolution of June, 1888, and the board of directors had no authority to make such reissue, because by the resolution of June 5, 1888, and the issue of the bonds thereunder, the board had exhausted its power to issue bonds; 3. The bonds of the second form prescribed by the resolution of June 3, 1890, are all void, because they are antedated, and do not bear date at the time of their issue.

We think it neither necessary nor yet proper to pass upon these questions.

It is not necessary, because from what has been said it must follow that the district was not legally organized.   As a consequence, its right to sell any of the remaining bonds is at an end, and the judgment of the trial court should so decree.   Therefore, there can no longer be any interest, either to the district or to intending purchasers, in the determination, and it becomes from this point of view merely a moot question.

It is not proper because some of the bonds (it is insisted) had been sold and had passed into the hands of *bona fide* purchasers before the institution of this proceeding.   These bondholders are not litigating in the matter.   A determination without their presence and participation might be embarrassing to a just decision

upon full presentation by all the parties in interest. The confirmation act contemplates a review by a court of the proceedings attending the issue of bonds, whether the bonds have actually been sold or not. After the issue, and before the sale, of any bonds it may well be of advantage to the district and to intending purchasers that the judgment of a court should be invoked to pass upon the regularity of the action of the district officers, but after sale different questions present themselves. The bonds are negotiable; public corporations are estopped from setting up many defenses of irregularity against the innocent holders of such negotiable securities. Whether or not the holder be an innocent purchaser and a purchaser without notice is itself a question which cannot be determined in this proceeding. From all these considerations, and others which will readily suggest themselves, it is proper in cases where bonds of a district have been actually sold before institution of confirmation proceedings to refuse consideration to questions of the regularity of such sales, leaving their determination to that forum before which appropriate action may be brought to test the questions, for it is only in such an action before such a court that there will be found full and unquestioned jurisdiction of the subject matter, and of all the necessary parties, as well as power to determine all objections and defenses.

For these reasons the judgment and order of the trial court are reversed.

McFarland, J., Temple, J., and Harrison, J., concurred.

Garoutte, J., concurring.—I concur in the reversal of the judgment and order upon the ground that in my opinion owners of town lots are not qualified signers of the petition.

Van Fleet, J., concurring.—I concur in the judgment and in the views expressed by Mr. Justice Henshaw, except only upon the question as to the sufficiency

of the notice given of the time of presentation to the board of supervisors of the petition for the formation of the district.

Upon that question I express no opinion.

Rehearing denied.

BEATTY, C. J., dissented from the order denying a rehearing.