SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| JOSEPH E. HANCOCK and CHARLES B. SHERRILL, JR., ) | Arizona Supreme Court No. CV-05-0381-AP/EL |
| Appellees, ) | Mohave County Superior Court |
| v. ) | No. CV2005-1323 |
| ANDY BISNAR, KENNETH GRIFFIN and LEE MUSICK, ) | |
| Appellants. ) | **O P I N I O N** |

Appeal from the Superior Court in Mohave County
The Honorable James E. Chavez, Judge

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH
INSTRUCTIONS**

_____

COPPERSMITH GORDON SCHERMER OWENS & NELSON P.L.C.          Phoenix
     By   Andrew S. Gordon
          Lauren Jacqueline Weinzweig
Attorneys for Joseph E. Hancock and Charles B. Sherrill, Jr.

GAMMAGE & BURNHAM P.L.C.                                   Phoenix
     By   Lisa T. Hauser
          Michella Abner
Attorneys for Andy Bisnar, Kenneth Griffin, and Lee Musick

ROBERT S. LYNCH & ASSOCIATES                              Phoenix
     By   Robert S. Lynch

And

PAUL R. ORME                                              Mayer
Attorneys for Amici Curiae Central Arizona Irrigation and
Drainage District and Maricopa Stanfield Irrigation &
Drainage District

WADE NOBLE                                                Yuma
Attorney for Amici Curiae Wellton-Mohawk Irrigation and
Drainage District, Yuma Irrigation District, and North
Gila Valley Irrigation and Drainage District

RYLEY CARLOCK & APPLEWHITE P.A.                          Phoenix
     By   L. William Staudenmaier, III
Attorneys for Amicus Curiae Roosevelt Water
Conservation District

DENNIS M. O'NEILL, CHANDLER CITY ATTORNEY              Chandler
     By   Cynthia J. Haglin, Assistant City Attorney

And

DEBORAH J. SPINNER, MESA CITY ATTORNEY                     Mesa
     By   Charles L. Cahoy, Assistant City Attorney
Attorneys for Amici Curiae Cities of Chandler and Mesa

_____

**H U R W I T Z**, Justice

¶1      This is an election contest challenging the qualifications of three individuals elected as directors of the Mohave Valley Irrigation and Drainage District ("MVIDD" or "District") in a recall election.  We hold that the challenged directors are not qualified to serve under the statutes governing irrigation districts.

## I.

¶2      MVIDD is a political subdivision of the state and a municipal corporation.  *See* Ariz. Const. art. 13, § 7; Ariz. Rev. Stat. ("A.R.S.") § 48-2901 (2005).  The District contains 21,648 acres of land, of which 3273 are agricultural.  At the time of the trial in this matter, 563 landowners had registered to vote in the District, only four of whom were agricultural

2

landowners.  Agricultural landowners use eighty-four percent of the water in the District and a combination of municipal, industrial, and domestic users consume the remainder.  All landowners in the District are subject to annual assessments of $1.33 per acre.

¶3    The District is composed of three divisions and is governed by a board of directors, with one director elected from each division.  A.R.S. § 48-3011(A) (2005).  District directors must be "qualified electors of the division of the district from which they are elected."  A.R.S. § 48-3011(B).  MVIDD elections are conducted through a "personal and individual" (one elector, one vote) voting system, *see* A.R.S. §§ 48-3015 (2005), -3018 (2005), as opposed to a "per acre" voting system, *see* A.R.S. §§ 48-3041 (2005), -3043 (2005).

¶4    A director is subject to recall under the laws governing recall of county officers, A.R.S. § 16-674 (1996), "by the vote of a majority of the qualified electors of the division which he represents," A.R.S. § 48-3024 (2005).  Recall petitions were filed with respect to the three incumbent directors of MVIDD, and the District held a recall election on September 13, 2005.  Because three other individuals received the most votes, the incumbent directors were each recalled.  The Mohave County Board of Supervisors approved the canvass of the election on October 3, 2005.

¶5      Four days later, one of the ousted directors and an elector ("Contestants") filed this election contest, arguing that the newly-elected directors ("Electees") are not eligible to serve because they do not own agricultural land in the District and therefore are not qualified electors under the rule in *Post v. Wright*, 37 Ariz. 105, 289 P. 979 (1930).[1]  In response, the Electees challenged the sufficiency of the Contestants' statement of contest and argued that *Post* was wrongly decided and should be overruled.

¶6      The superior court rejected the Electees' challenges to the statement of contest.  On the merits, the court held that it was bound by *Post* and that the Electees therefore were not qualified electors because they are not agricultural landowners. Because the Electees were not qualified electors, the superior court held that they were ineligible to serve as directors of the District.  The court ordered "that the incumbent directors shall remain in office until their successors are appointed and qualify."[2]

---

[1]  The Contestants challenged only the qualifications of the Electees and did not challenge the ballots of the approximately 550 other non-agricultural landowners who voted in the recall election.  Nor had any challenge been raised to signatures of non-agricultural landowners on the recall petitions.

[2]  The superior court stayed this order "pending the Supreme Court's ruling."

¶7     The Electees timely appealed.  We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-2101(B) (2003).[3]

**II.**

¶8     The Electees argue that the Contestants failed to plead jurisdictional facts necessary to maintain an election contest.  Because these arguments, if correct, would dispose of the appeal, we address them first.

**A.**

¶9     The statutes governing irrigation districts permit districts to be subdivided into divisions, A.R.S. § 48-2913(B) (2005), and require that "[d]irectors representing a division shall be qualified electors of the division . . . from which they are elected," A.R.S. § 48-3011(B).  The Electees first assert that the statement of contest and its supporting

---

[3]    We have concurrent jurisdiction with the court of appeals over this case.  *Ariz. Podiatry Ass'n v. Dir. of Ins.*, 101 Ariz. 544, 548-49, 422 P.2d 108, 112-13 (1966).  We accepted jurisdiction because the central issue is the continued validity of this Court's decision in *Post*.  *See State v. Smyers*, 207 Ariz. 314, 318 n.4, 86 P.3d 370, 374 n.4 (2004) ("The courts of this state are bound by the decisions of this court and do not have the authority to modify or disregard this court's rulings.  Any other rule would lead to chaos in our judicial system.") (internal quotation and citation omitted).  In the ordinary course, appeals in elections contests should be to the court of appeals.  If special circumstances exist that require that this Court hear the appeal directly, a motion for transfer may be filed under ARCAP 19.

affidavits are insufficient because they do not allege in which MVIDD division the Contestants are qualified electors.

¶10 Proceedings to recall the directors of an irrigation district "shall be in all respects as provided by the constitution and laws of the state for the recall of county officers." A.R.S. § 48-3024. Contests of county elections, in turn, are made "on the same grounds and in the same manner as contests of election to a state office." A.R.S. § 16-674(A). Section 16-673(A) (1996), which governs the requirements for a statement of contest for state elections, is thus the relevant statute.[4] Under that provision, a valid statement of contest requires:

> [A] statement in writing setting forth:
>
> 1. The name and residence of the party contesting the election, and that he is an elector of the state and county in which he resides.
>
> 2. The name of the person whose right to the office is contested, or the title of the measure, or constitutional amendment, or other proposition as it appeared upon the official ballot.
>
> 3. The office the election to which is contested.
>
> 4. The particular grounds of the contest.

A.R.S. § 16-673(A).

---

[4] In addition, A.R.S. § 16-642(B) states that a contest of an election held by "a special district as defined in title 48," the title governing irrigation districts, is to be "as described in § 16-673."

6

**¶11** Section 16-673(A)(1) requires only an allegation that the contestant is "an elector of the state and county in which he resides." This Court interpreted the predecessor to this statute in the context of a local election in *Kitt v. Holbert*, 30 Ariz. 397, 248 P. 25 (1926) (addressing Arizona Code ¶ 3061 (1913)). *Kitt* involved challenges to the election of two Tucson city councilmen, and held that under the statute, "the right of contest of any election is granted to any elector of the *particular political subdivision* from which the officer whose election is contested is chosen." *Id.* at 400, 248 P. at 26 (emphasis added); *see also Sorenson v. Superior Court*, 31 Ariz. 421, 426, 254 P. 230, 231 (1927) (holding that a school district is a political subdivision of the county for purposes of the recall statute).

**¶12** In the case of an election contest involving an irrigation district, the "political subdivision from which the officer whose election is contested is chosen," *Kitt*, 30 Ariz. at 400, 248 P. at 26, is the *district*, not one of its divisions. Article 13, Section 7 of the Arizona Constitution establishes a district – not a division thereof – as a political subdivision of the state. *See also* A.R.S. § 48-2901 (providing that the *district* – not its divisions – is a municipal corporation). The Contestants alleged in this case that they were electors of the District, and that is all the recall statutes require.

7

¶13     The Electees also argue that the statement of contest is defective because the "Contestants failed to allege . . . that they possessed property qualifications for 90 days prior to the recall election."  They base this argument on A.R.S. § 48-2917(A), which establishes the qualifications of electors in irrigation districts.  Section 48-2917(A) provides:

> No person shall be entitled to vote at any election, held under the provisions of this chapter unless:
>
> 1. He is a holder of title or evidence of title, including receipts or other evidence of the rights of entry-men on lands under any law of the United States or this state, to land in the district, and has possessed such qualifications for *ninety days immediately preceding the date of such election.*
>
> 2. He has resided continuously for six months immediately preceding the election in the county in which the district or a part thereof is located.
>
> 3. He is at least eighteen years of age.
>
> 4. He is registered as provided by § 48-3015.

(Emphasis added.)

¶14     This Court addressed this very argument in *Schahrer v. Bell*, 34 Ariz. 334, 271 P. 715 (1928).  In that case, a contestant challenged an election of the Verde River Irrigation and Power District; the statement of contest "fail[ed] to show that the contestants possessed the [property] qualifications designated *90 days preceding the election*."  *Id.* at 338, 271 P. at 716 (citing 1921 Ariz. Sess. Laws, ch. 149, § 1 (codified as

8

amended at A.R.S. § 48-2917).  The Court held that "[i]n the absence of such [an] averment and proof thereof, the contestants would not be . . . competent to institute or prosecute this proceeding."  *Id.* at 339, 271 P. at 716.  Electees argue that *Schahrer* controls the result here.

¶15     Under the code form of pleading in place at the time of *Schahrer*, a party's complaint was required to "set forth facts sufficient to state a cause of action."  *Greenlee County v. Cotey*, 17 Ariz. 542, 549, 155 P. 302, 305 (1916).  Although code pleading "abandoned technical forms of actions," it nonetheless required allegation of "all the material facts essential to constitute the particular cause of action relied on."  *Id.* at 550, 155 P. at 305 (Franklin, J., concurring); *see also Button v. O.S. Stapley Co.*, 40 Ariz. 79, 87, 9 P.2d 1010, 1012 (1932) ("One of the fundamental principles of common-law pleading also is that a plaintiff must allege in his complaint the existence of every fact which it is necessary for him to prove in order to sustain a judgment.") (Lockwood, J., dissenting).

¶16     More than a decade after the *Schahrer* opinion, however, this Court adopted rules of civil procedure.  Under those Rules, a complaint need only provide "[a] short and plain statement of the grounds upon which the court's jurisdiction depends."  Ariz. R. Civ. P. 8(a); *see also Guerrero v. Copper*

9

*Queen Hosp.*, 112 Ariz. 104, 106-07, 537 P.2d 1329, 1331-32 (1975) ("In testing a complaint for a failure to state a claim, the question is whether enough is stated which would entitle the plaintiff to relief upon some theory to be developed at trial. The purpose of the rule is to avoid technicalities and give the other party notice of the basis for the claim and its general nature.") (citing *Mackey v. Spangler*, 81 Ariz. 113, 115, 301 P.2d 1026, 1027-28 (1956)).

¶17    Here, the Contestants alleged that each was a "resident of Mohave County" and "a qualified elector of the District." These allegations are sufficient under the notice pleading requirements of Rule 8(a) to establish the superior court's jurisdiction to consider this election contest. By alleging that they were "qualified elector[s]" of the District, the Contestants gave sufficient notice that they claimed to meet all requirements of the statute defining qualified electors, including the requirement that they possessed title to land for more than ninety days prior to the election.[5]

### III.

¶18    In *Post*, this Court analyzed the requirements for qualified electors of irrigation districts set out in the

---

[5]    In their answer to the statement of contest, the Electees admitted that each of the Contestants was a "qualified elector somewhere within the District." There is thus no claim that

predecessor statute to A.R.S. § 48-2917. 37 Ariz. at 117-24, 289 P. at 983-85 (addressing 1921 Ariz. Sess. Laws, ch. 149, §§ 1, 3). That statute required, in language materially indistinguishable from that in current § 48-2917(A)(1), that qualified electors be "'the holders of title or evidence of title, including receipts or other evidence of the rights of entrymen on lands under any law of the United States or of this state to lands in any district.'" *Id.* at 120, 289 P. at 984 (citing 1921 Ariz. Sess. Laws, ch. 149, § 1).

¶19 The Court started from the premise that, "taken literally," the statutory language would permit all "holders of title to land in the district" to be electors. *Id.* Rather than relying solely on the statutory language, however, the Court determined that it "should look to the whole irrigation district law" to determine the qualifications for electors. *Id.* The Court noted:

> [T]he primary purpose of this law was to permit landowners to organize an irrigation district to obtain water for the irrigation of their agricultural lands, lands of little or no value without water but which the owners or possessors expect to make very valuable for the production of crops by the application thereto of water.

*Id.* at 120-21, 289 P. at 984. The Court then examined case law analyzing California's Wright and Bridgeford Acts, the source of

_____

Contestants lacked the statutory qualifications to file an election contest.

11

Arizona's irrigation district laws.  *Id.* at 121-23, 289 P. at 984-85.  Under that case law, persons signing a petition to organize an irrigation district were required to be "'bona fide owners of agricultural land, desiring to improve the same by conducting water upon it.'"  *Id.* at 123, 289 P. at 985 (quoting *In re Cent. Irrigation Dist.*, 49 P. 354, 360 (Cal. 1897)).  Given the purpose of the Arizona irrigation district laws and California's interpretation of its similar statutes, the Court concluded that qualified electors also must be agricultural landowners.

¶20      Under *Post*, the Electees, who do not own agricultural land in the District, cannot serve as MVIDD directors.  The Electees therefore ask us to overrule *Post*, arguing that it "was wrongly decided because the Supreme Court should not have looked beyond a statute that was clear on its face to add additional requirements."

¶21      The Electees' statutory interpretation argument has some appeal.  However, we are not writing on a clean slate: *Post* was decided more than three-quarters of a century ago.  Thus, we must decide not merely whether we would arrive at the same result today, but whether we should overrule such long-standing precedent.  Principles of stare decisis counsel against such a result.

¶22 The doctrine of stare decisis "'is grounded on public policy that people should know what their rights are as set out by judicial precedent and having relied on such rights in conducting their affairs should not have them done away with by judicial fiat.'" *Derendal v. Griffith*, 209 Ariz. 416, 424 ¶ 33, 104 P.3d 147, 155 (2005) (quoting *White v. Bateman*, 89 Ariz. 110, 113, 358 P.2d 712, 713-14 (1961)); *see also Galloway v. Vanderpool*, 205 Ariz. 252, 256 ¶ 16, 69 P.3d 23, 27 (2003) ("The doctrine of *stare decisis* . . . seeks to promote reliability so that parties can plan activities knowing what the law is."). The strength of that doctrine is at its apex "when prior decisions construe a statute." *Galloway*, 204 Ariz. at 256 ¶ 16, 69 P.3d at 27; *see also State v. Hickman*, 205 Ariz. 192, 201 ¶ 38, 68 P.3d 418, 427 (2003) (noting that "in cases involving statutory interpretation the burden [required to overrule a prior decision] is highest"). This is because if we have "interpret[ed] the statute other than as the legislature intended, the legislature retains the power to correct us." *Galloway*, 205 Ariz. at 256 ¶ 17, 69 P.3d at 27. Therefore,

> [i]t is universally the rule that where a statute which has been construed by a court of last resort is reenacted in the same or substantially the same terms, the legislature is presumed to have placed its approval on the judicial interpretation given and to have adopted such construction and made it part of the reenacted statute.

13

*Scheehle v. Justices of the Supreme Court*, 211 Ariz. 282, 288 ¶ 19, 120 P.3d 1092, 1098 (2005) (quoting *State v. Superior Court*, 104 Ariz. 440, 442, 454 P.2d 982, 984 (1969)).

**¶23** Since *Post* was decided more than seventy-five years ago, the legislature has amended A.R.S. § 48-2917 and its predecessor statutes nine times; none of those amendments addressed or sought to alter our holding in *Post*. We therefore presume that the legislature has relied upon and ratified our decision. *See Galloway*, 205 Ariz. at 256 ¶ 17, 69 P.3d at 27 ("If the legislature amends a statute after it has been judicially construed, but does not modify the statute in a manner that changes the court's interpretation, we presume the legislature approved of the court's construction and intended that it remain a part of the statute."); *Cagle v. Butcher*, 118 Ariz. 122, 124 n.2, 575 P.2d 321, 323 n.2 (1978) ("Where a statute that has been construed by a court of last resort is reenacted in substantially the same terms, the legislature is presumed to have placed its approval on the judicial construction and adopted such construction for the reenactment of the statute.").

**¶24** Our prior cases recognize that "we do not lightly overrule precedent and do so only for compelling reasons." *Wiley v. Indus. Comm'n*, 174 Ariz. 94, 103, 847 P.2d 595, 604 (1993). The Electees argue that "changes to the irrigation

14

district laws" provide a compelling reason for overruling *Post*.[6] These changes, the Electees assert, have sufficiently changed the purposes of irrigation districts such that *Post* should not be followed.

¶25    Although the powers of irrigation districts have changed somewhat since 1928, we do not find this a sufficiently compelling reason to overrule *Post*. The opinion of the Supreme Court of the United States in *Ball v. James*, 451 U.S. 355 (1981), is instructive in this regard. In *Ball*, the issue was whether voting in the Salt River Project Agricultural Improvement and Power District ("SRP") could constitutionally be limited to landowners in the district. *Id*. at 357. After holding that the "narrow primary purpose," of SRP, to "store, conserve, and deliver water for use by [SRP] landowners," *id*. at 369, justified restricting the franchise to SRP landowners, the Court considered whether that purpose had been sufficiently changed by subsequent events to require a different result. Although SRP had "become the supplier of electric power for hundreds of thousands of people in an area including a large part of metropolitan Phoenix," *id*. at 357, the Court nonetheless

---

[6]    The Electees point to a 1931 amendment to the irrigation district statutes granting the power to charge for domestic water, *see* 1931 Ariz. Sess. Laws, ch. 98, § 2 (currently codified at A.R.S. § 48-2978), and to the 1940 adoption of Article 13, Section 7 of the Arizona Constitution, which

15

held that the district's original statutory purpose sufficiently justified restriction of the franchise, *id*. at 371-72.

¶26     Any increase in the authority of irrigation districts similarly has not altered their primary purpose.  We recently confirmed that, despite the increased urbanization of Arizona, the primary purpose of irrigation districts remains to "develop strong water systems to irrigate arid land." *Hohokam Irrigation & Drainage Dist. v. Ariz. Pub. Serv. Co.*, 204 Ariz. 394, 398 ¶ 17, 64 P.3d 836, 840 (2003).  Much as the transformation of SRP from a district devoted almost entirely to agriculture into an entity that provides electricity to hundreds of thousands of urban users was insufficient to require an alteration of its statutory voting scheme, the fact that MVIDD now delivers substantial amounts of domestic water and power does not change the nature of the District.  Such changes do not "compel" us to overrule *Post*.  *See Wiley*, 174 Ariz. at 103, 847 P.2d at 604.

## IV.

¶27     Because *Post* remains the law, the superior court correctly held that the Electees are not qualified electors because they admittedly do not own agricultural land.  The law requires that directors of the District "shall be qualified

_____

established irrigation districts as "political subdivisions of the State."

16

electors," A.R.S. § 48-3011(B), and the Electees therefore cannot serve as directors of the District.

¶28      After finding that the Electees "are ineligible to serve as directors of MVIDD," the superior court ordered that the "incumbent directors shall remain in office until their successors are appointed and qualify." This was error. This Court has previously held that

> it is not possible for an incumbent to be recalled and at the same time be retained in the office . . . . Unless he receive[s] the highest number of votes, a vacancy automatically occurs when his successful opponent refuses to qualify. The paradox of being recalled and at the same time elected is not possible under our Constitution.

*Abbey v. Green*, 28 Ariz. 53, 70, 235 P. 150, 156 (1925). Thus, the ousted directors cannot be returned to office and the superior court should not have so ordered.

¶29      Under the Arizona Constitution, "[i]n the event that [a] successor shall not qualify within five days . . . the said office shall be vacant, and may be filled as provided by law." Ariz. Const. art. 8, pt. 1, § 4; *see also* A.R.S. § 19-216(A) (2002) ("If the incumbent's successor does not qualify within five days after the results of the election have been declared, the office shall be vacant, and may be filled as provided by law."). Vacancies in District directorships are governed by A.R.S. § 48-3011(C), which provides as follows:

17

> If a vacancy occurs in the board of directors . . . the vacancy shall be filled by appointment made by the remaining members of the board of directors or, upon their failure or inability to appoint within thirty days after the vacancy occurs, upon petition of five electors of the district the board of supervisors of the county in which the office of the district is located shall by appointment fill the vacancy or vacancies.

¶30    Here, because none of the Electees is qualified to serve as a director, there are no "remaining members of the board of directors" available to appoint new directors. A.R.S. § 48-3011(C). The parties stipulated at the time of trial that there were then only four qualified electors, making it impossible for "five electors of the district" to "petition . . . the board of supervisors" to fill the vacancies. *Id.* Based on the parties' submissions to this Court, however, it appears there now may be five or more qualified electors available to file such a petition, and the vacancies resulting from the decision below may thus be filled as provided by law.

## V.

¶31    For the reasons stated above, we affirm the superior court's judgment that the Electees cannot serve as directors of the MVIDD. We reverse the superior court's judgment reinstating the ousted directors and remand with instructions to enter a judgment declaring the three offices vacant.

_____
Andrew D. Hurwitz, Justice

18

CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Rebecca White Berch, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
W. Scott Bales, Justice