[Civil No. 1484. Filed February 25, 1916.]

[155 Pac. 302.]

GREENLEE COUNTY, Appellant, v. O. J. COTEY, Appellee.

1. CONTRACTS—BUILDING CONTRACTS—NONPAYMENT OF INSTALLMENTS —EFFECT.—The mere refusal of one employing a contractor to pay an installment due under the contract stipulating for periodical payments as the work progressed on estimates of the work done is not a breach of a condition precedent or a prevention of performance, and the contractor abandoning the work may not recover on the contract for profits.

2. CONTRACTS—BUILDING CONTRACTS—NONPAYMENT OF INSTALLMENTS— EFFECT.—The remedy, if any, of contractor abandoning the work on failure of the owner to pay an installment due under the contract is on a *quantum meruit*, and not on the contract.

3. PLEADING—COMPLAINT—REQUISITES.—Though the Code abolishes technical forms of action, the complaint must set forth with reasonable certainty the cause of action relied on.

4. PLEADING—COMPLAINT—AMENDMENTS.—Where plaintiff can state a cause of action though a recovery may be doubtful, it is not an abuse of discretion for the trial court to permit plaintiff to amend, his complaint not stating a cause of action.

APPEAL from a judgment of the Superior Court of the County of Greenlee. A. G. McAllister, Judge. Reversed and remanded.

Mr. E. V. Horton, County Attorney, for Appellant.

Messrs. Stratton & Lynch, for Appellee.

CUNNINGHAM, J.—The appellant complains of the order overruling its demurrers to the complaint for the reason the complaint alleges no facts to show that plaintiff had completed or substantially performed his contract according to its terms, but he does allege in his complaint that he had not performed his contract in full; and for the further reason that no allegation of fact appears to show that defendant by any act prevented plaintiff from a full performance of his contract; or that the defendant failed to perform any con-

dition precedent to plaintiff's performance. The complaint sets forth the steps taken by the county leading to the making of the contract with the plaintiff for the construction of a public highway upon a definite location specified; the bid of the plaintiff to construct the said extension for the sum of $8,976.54; the acceptance of the plaintiff's bid by the county board of supervisors; and alleges, in paragraph 3:

"That in pursuance to the said bid of plaintiff and the acceptance thereof by the said board of supervisors, plaintiff on the sixth day of April, 1914, made and entered into a written contract with the said county of Greenlee for the construction of the said extension of the Metcalf road, a copy of which written contract is hereto attached, marked 'Exhibit A,' and made a part of this complaint."

Paragraph 4 sets forth in brief that during the month of May the plaintiff performed work and labor and furnished material in accordance with the provisions of the contract to the estimated value of $5,000, and that defendant paid plaintiff the sum of $3,700, or 75 per cent of the then completed work in compliance with said contract; that during the month of June, 1914, plaintiff performed work and labor and furnished material in accordance with the provisions of said contract in the amount of $3,120, and, in addition thereto, plaintiff performed extra and additional work, during the month of June, 1914, under the orders of the defendant and the county surveyor, as stipulated in said contract, in the sum of $1,160. Plaintiff alleges: That on the last day of June, 1914, "he had done and completed all of the work required of him under said contract, except as hereinafter stated, and had done and performed all the extra work required by the defendant; that all the said work had been done in exact compliance with the plans and specifications furnished him by the county surveyor and made a part of said contract, and in exact accordance with the orders and directions of the county surveyor and this defendant; . . . that all fills, culverts, cuts, walls, cement walks, pipes and flumes had been substantially completed, and the said extension of said road was at that date complete, with the exception of crowning and leveling in a few places, and with the exception of the partial completion of one fill which had been delayed under orders of the county surveyor. Plaintiff further alleges that the

amount of money required to complete the whole of the said contract at the said last day of June, 1914, would not exceed the sum of $856.54.''

Paragraph 5 sets forth: ''That at the expiration of the month of June, 1914, it became the duty of the defendant . . . to make an estimate of all work done during said month, and to pay to plaintiff 75 per cent of such estimate so made, according to the terms and conditions of said contract. That it became the duty of the said defendant, under said contract, to pay to plaintiff the whole amount of the extra work done during the said month of June at the expiration thereof. That defendant failed, neglected and refused to make any estimate whatever of said work so done, . . . and has at all times since failed, refused and neglected to make such estimate, and has failed, refused and neglected to pay to plaintiff any part whatever of the amount due this plaintiff for work done and completed during the said month of June.''

The plaintiff sets forth that he estimated the said work done during the said month of June and determined the value thereof to be, for work done under the contract of the value of $3,120, and the extra work performed under orders of the defendant as of the value of $1,160. Plaintiff then sets forth that he prepared and verified his claim in the sum of $3,500, and demanded payment from the county, and that on the third day of August, 1914, the board of supervisors refused the claim and disallowed and rejected the demand; and ''that the said defendant having failed, neglected and refused to keep and perform its specific obligations under said contract, and having failed, neglected and refused to make any estimate whatever of the said work so done by this plaintiff during the said month of June, and having failed, neglected, and refused to pay to this plaintiff 75 per cent of such work so done during said month or any part thereof, this plaintiff, on the seventeenth day of August, 1914, rescinding the said contract, filed with the clerk of the board of supervisors of said Greenlee county his demand as follows'': setting forth a demand for the full contract price of said work ''as per the contract'' in the sum of $8,976.54, for the amount of the extra work done under orders, $1,160, and for 15 per cent of the amount plaintiff estimated as required to complete said work as a reasonable amount of profit on the unfinished work

in the sum of $128.48. From the total amount is deducted
the amount paid on account of the May work, $3,700, and the
amount plaintiff estimated would be required to finish the
work, $856.54, leaving a net balance of $5,708.48 for payment
of which plaintiff presented his demand to the board of super-
visors, as required by law, and his claim was rejected and dis-
allowed in its entirety. Plaintiff alleges that 15 per cent of
the amount required to complete the contract is a reasonable
and usual profit upon said work, and, had plaintiff been al-
lowed to finish said contract according to its terms, he would
have realized said profit. He demands judgment for said
balance of $5,708.48.

The plaintiff's cause of action is founded upon the special
written contract made April 6, 1914, notwithstanding the in-
definite statement "rescinding the contract." Such state-
ment is surplusage and inconsistent with the relief demanded.

"In declaring on a contract, the . . . complaint . . . must
show a binding agreement between the parties, and must state
facts to show that the defendant is under a legal obligation
or duty to the plaintiff." 9 Cyc. 712.

"The plaintiff must set for[th] the subject matter of the
contract with sufficient certainty to make a possible adverse
judgment a bar to another action. Every material part of
the contract must be averred or the action fails; and it will
not do to set forth the evidence of the contract instead of the
contract itself." 9 Cyc. 713.

"The plaintiff may if he chooses set out the contract in suit
in *haec verba,* but this is not necessary, for it is sufficient to
plead a contract according to its legal effect." 9 Cyc. 713.

"But merely annexing to the . . . complaint, . . . as an
exhibit, a copy of a contract in suit, is not equivalent to posi-
tive allegations of the terms of such contract or a statement
thereof in *haec verba.*" 9 Cyc. 714; *MacPherson* v. *Hat-
tich,* 10 Ariz. 104, 85 Pac. 731.

The complaint fails to state facts showing or tending to
show that the defendant is under a legal obligation or duty
to the plaintiff to pay the plaintiff the full contract price—
to make final settlement—for any part of the work and mate-
rial done and furnished less than the completed work prior
to the time plaintiff has completed the whole work required
by the contract. No allegation of the complaint can be con-

XVII Ariz.—35

strued as averring the legal effect of any provision of the contract as placing such duty upon the defendant. The contract is not pleaded in *haec verba;* nor according to its legal effect, placing such duty upon the defendant. Such a provision of the contract, if it exists, must be discovered by an examination of the exhibit, and the exhibit must supply the absence of these material allegations. Such is not the office of an exhibit attached to the complaint. *MacPherson* v. *Hattich, supra.*

Conceding that the complaint may be so construed as to be considered sufficient in the respect above mentioned, appellant contends that another fatal error appears upon its face. The plaintiff sets forth, with some particularity, facts showing that he entered into a special written contract with the defendant county "for the construction of the said extension of the Metcalf road," and alleges that during the month of June, 1914, he performed work and furnished material in accordance with the provisions of said contract to specified amounts; and during said month of June he performed extra work stipulated in the said contract to be performed under specified conditions arising to the value of a specified amount; that on the last day of June, 1914, "he had done and completed all the work required of him under said contract, except as hereinafter stated; . . . that all fills . . . culverts, cuts, . . . had been substantially completed; and that said extension of said road was at that date (the last day of June, 1914) complete with the exception of the crowning and leveling in a few places, and with the exception of the partial completion of one fill; . . . that the amount of money required to complete the whole of the said contract at the said last day of June, 1914, would not exceed the sum of $856.54."

No doubt can exist from such allegations that plaintiff's intention was to show that the contract declared upon required him to complete the entire construction of the road— to build, to form, to make, a road. The duty to complete no less than a completed or finished construction can be understood from such allegations. Clearly, the special contract declared upon in the complaint, as understood from the foregoing allegations, required the plaintiff to complete the entire work called for, by the terms of the contract. On the face of the complaint, plaintiff concedes that he has failed to

perform his whole duty to the defendant by showing that portions of the work remained incomplete, and unfinished when this action was commenced. Such fact appearing, it is clear that the plaintiff cannot legally claim the right to recover the benefits promised by the defendant on condition of full performance, unless plaintiff alleges facts legally excusing full performance. Otherwise, the plaintiff, by his failure to render full performance, shows upon the face of the complaint no right to recover on the contract sued upon, for the reason the contract by plaintiff's wrong has ceased to be binding upon the county. *Perkins* v. *Hart,* 11 Wheat. 237, 6 L. Ed. 463.

The only excuse attempted to be offered by plaintiff for his failure to complete the work of construction as he promised is found in the fourth and fifth paragraphs of the complaint quoted above, wherein plaintiff sets forth the duty of the defendant to estimate the value of the work done and material furnished by plaintiff during the month of June, 1914, and pay therefor at the end of said month, all as stipulated, and defendant's failure in both respects, and particularly from the following language quoted from paragraph 5 of the complaint:

"That the said defendant having failed, neglected and refused to keep and perform its specific obligations under said contract, and having failed, neglected and refused to make any estimate whatever of the said work so done by this plaintiff during the said month of June, and having failed, neglected and refused to pay to this plaintiff 75 per cent of such work, so done during said month or any part thereof, this plaintiff, on the seventeenth day of August, 1914, . . . filed with the clerk of the board of supervisors of said Greenlee county his demand" for a final settlement under the terms of the contract, as for a full performance.

If such facts are intended to be advanced as an excuse for plaintiff's failure to complete the work of construction and to preserve the contract—and we see no other purpose for their presence in the complaint—then the question arises whether, as a matter of law, the failure of the defendant county to discharge its said duties, so referred to, legally excuses plaintiff from the performance of his duty to complete the construction of the road and preserves plaintiff's right to recover

on the special contract as for a full performance. Clearly, defendant's alleged failure to estimate the work and pay therefor in accordance with its obligation would have the legal effect of a breach and mark a termination of the contract, unless such failure is waived by the plaintiff. If such failure be waived by the plaintiff, then such matter must be treated by plaintiff as if it never existed, and plaintiff must so treat such delinquency in order to keep the contract open, and he must perform his duty under the contract to completion without regard to defendant's failure. To treat such breach of duty by defendant as an excuse for abandoning the construction work is to give effect to the breach as ending the contractual relations by terminating the contract. If so treated, the breach is not waived, and the contract is at an end, and it is not open for any purpose; it is not open for performance on the part of either party, nor can the party injured and claiming rights arising from such wrong base an action upon the contract and claim the right to recover as for full performance, for the reason the other party is guilty of conduct which terminated the special contract sued upon and plaintiff acquiesced therein. A contract cannot be shown to have been terminated for the purpose of excusing full performance, and at the same time become the basis for an action to recover as for full performance. If the plaintiff elected to waive defendant's failure to perform its specific obligations, he must show by appropriate allegations that he on his part has fully performed or substantially performed his obligations or stands ready to perform, or else by appropriate allegations sets forth facts excusing substantial performance, before he can recover the benefits accruing to him as for full performance of the special contract declared on. To assert defendant's breach of the stipulation of the contract as an excuse for plaintiff's failure of substantial performance is inconsistent with a waiver by plaintiff of such breach. Such assertion is the claim of a right flowing from such breach and wrong. Such claim is inconsistent with a waiver of the breach, but wholly consistent with the enforcement of rights arising from the breach.

The effect then follows that the contractual relations existing ceased to exist. The contract was at an end from the time plaintiff discontinued performance on his part, because

of defendant's failure to keep its specific obligations. When defendant refused to perform its promise to plaintiff, plaintiff was under no further legal duty to perform on his part, and his election to perform no further ended the contract relation, and neither party could thereafter hold the other to the contractual obligations. By electing to perform no further plaintiff could not hold the defendant to further performance, and his remedy for relief for injury suffered lay in an action for the reasonable value of the work and material actually done and furnished, as if done and furnished upon an implied promise which the law raises in such case; or in an action for damages upon the breach of the contract.

The complaint fails to set forth facts sufficient to state a cause of action upon the special contract, for the reason plaintiff shows on the face of the complaint he has failed to perform its terms. Plaintiff states no cause of action upon an implied promise, nor upon the breach of a contract. He claims no relief from either the implied promise, nor the breach. The court erred in overruling defendant's demurrer based on the ground of insufficient facts stated to constitute a cause of action.

Therefore the judgment is vacated and the cause remanded, with instructions to sustain the general demurrer and take such further proceedings as the law provides.

Reversed and remanded, with instructions.

FRANKLIN, J., Concurring.—I concur in the judgment.

It seems to me the facts of this case place it squarely within the rule announced in *Cox* v. *McLaughlin,* 52 Cal. 590, and adhered to in a number of appeals (54 Cal. 605; 63 Cal. 196; 76 Cal. 60, 9 Am. St. Rep. 164, 18 Pac. 100), that the mere refusal to pay an installment of money due under a contract was not the breach of a condition precedent, or such a prevention of performance as would sustain an action upon the contract for its profits. The stipulations of a contract might be so worded as to make the payments a condition precedent to performance, and a failure to make the payments constitute such prevention as would be equivalent to performance. But the rule and the reason for it have no application to the facts of the present case.

Such a failure might, under a particular state of facts, justify the contractor in refusing to proceed and authorize an action for the value of the work already done as upon a *quantum meruit. San Francisco etc. Co.* v. *Dumbarton etc. Co.,* 119 Cal. 272, 51 Pac. 335; *Woodruff Co.* v. *Exchange Realty Co.,* 21 Cal. App. 607, 132 Pac. 598. See *Pasquale Valente* v. *Israel Weinberg,* 80 Conn. 134, 67 Atl. 369, and case note in 13 L. R. A. (N. S.) 448. Clearly, the remedy of the plaintiff, if he has a cause of action, is upon a *quantum meruit* and not upon the contract.

The appellant suggests, however, that the Code has abandoned technical forms of actions, and is more concerned with the issues involved than with the particular name which should be given to the form of action. The Code has done all this, and the adjudications have followed its spirit with the utmost liberality. It is the policy of the law that access to the courts should be free and unobstructed, both for the purpose of maintaining actions and making defenses thereto. It is, however, of no more importance that a right may be asserted and a wrong redressed than it is that a person against whom a complaint is made shall have the legal privilege of showing, both in law and in fact, that the alleged right is unfounded and the alleged wrong incapable of the relief asked, and when the matter is once finally determined, if it should come up again, be protected by the former adjudication. Herein lies substantial justice.

The Code provisions do not attempt to do away with causes of actions nor with the doctrine of *res judicata,* but they have done away with such allegations as were purely technical and formal under the old system. There now is, and must always be, the necessity for alleging in ordinary and concise language all the material facts essential to constitute the particular cause of action relied on. Such is the spirit of the Code, and it must be adhered to so that the opposite party may be apprised of what he is to meet, and thus be enabled to make his defense; and, where the case is finally settled, it may in the future be determined with reasonable certainty what has been set at rest. It is not because of a particular name that the law frowns upon the plaintiff's pleading, but it is because of the want of essential allegations of fact that he is defeated. It is not here a mere distinction in matter of form,—such is

obliterated by the Code,—but the thing here is a matter of substance that may not be dispensed with under the Code. Definiteness and distinctness are by no means technicalities, but instrumentalities with which confusion may be conquered or avoided.

"It is a gross error into which many have fallen to suppose that, because the practice act abolishes the distinctions in the forms of action, it is immaterial what the substantial allegations of pleadings are." *Sampson* v. *Schaeffer,* 3 Cal. 196, 205.   See, also, *Miller* v. *Van Tassel,* 24 Cal. 459, 463.

"The object of the Code was to abolish the different forms of action, and the technical and artificial modes of pleading used at common law, but not to dispense with the certainty, regularity and uniformity which are essential in every system adopted for the administration of justice.   The plaintiff must state his cause of action with the same substantial certainty as was formerly required in a declaration." *Oates* v. *Gray,* 66 N. C. 442, 443.

"The rules of pleading at common law have not been abrogated by the C. C. P.   The essential principles still remain, and have only been modified as to technicalities and matters of form." *Parsley* v. *Nicholson,* 65 N. C. 207, 210.

"While by provision of the Civil Code the common-law forms of action are expressly abolished, yet it is true, and ever must remain true, in any orderly administration of justice, that the precise nature of the cause of action must be determined before the rules of law applicable thereto can be ascertained and applied.   Any other method of procedure must of necessity lead to inextricable confusion." *Carbondale Inv. Co.* v. *Burdick,* 67 Kan. 329, 334, 72 Pac. 781, 783; 1 Corpus Juris. Actions, sec. 128.

In an action for the enforcement of a private right, or the redress of a private wrong, one could not be tried and punished for the commission of a public offense.   Nor should one charged with the commission of a homicide be compelled to defend the claims of his grocer that his last month's account had not been settled.   These illustrations may be extreme, but only in degree, not in principle.   The means used must be appropriate to the end sought, and it must never be lost sight of that the right to defend against an assertion is,

under the law, just as jealously regarded as the right to assert.

If the plaintiff can state a cause of action, though in view of the facts here presented a recovery may be doubtful, nevertheless I think that, in the furtherance of substantial justice, it would not be an abuse of discretion by the superior court if he were allowed, upon terms, to amend his pleading if he be so advised.

ROSS, C. J.—I concur in the judgment and agree with the views expressed in the opinion of Mr. Justice FRANKLIN.