**PHŒNIX TEMPE STONE CO. et al. v. DE WAARD et al. \***

**STANDARD ACC. INS. CO. v. SAME.**

Circuit Court of Appeals, Ninth Circuit.
June 27, 1927.

No. 4971.

**1. Contracts ⬅337(1)—Complaint in subcontractors' action for breach of contract held not to demurrable as showing waiver of breach.**

Complaint in action by subcontractor for breach of contract, alleging certain breaches in connection with extra work claimed to have been performed, *held* not subject to demurrer as showing waiver of breach, in that negotiations were continued between parties after alleged breaches with a view to complete performance.

**2. Contracts ⬅314—Plaintiff may treat act of defendant rendering performance of contract impossible as discharge from further performance.**

Where an act of defendant renders complete performance of contract impossible, plaintiff may treat act as discharge from further performance and claim compensation for what

\*Rehearing denied October 10, 1927.

has been done and damages which have been sustained.

**3. Trial ⬅136(1)—Whether there has been waiver is generally question of fact for jury.**

Whether in any case there has been a waiver is generally a question of fact, and sufficiency of evidence to establish it is for jury.

**4. Contracts ⬅322(3)—Evidence in subcontractors' action for breach of contract held not to show waiver of breach.**

In action by subcontractors for alleged breach of contract, evidence *held* not to show plaintiffs' waiver of prior breach by reason of negotiation looking towards an arrangement for allowance for extra work done.

**5. Judgment ⬅222—Judgment for subcontractor against original contractor for breach held not to affect contractor's substantial right, because not deducting award against subcontractor for material and labor claims.**

Where judgment in subcontractors' action for alleged breach of contract awarded judgment against original contractor in favor of plaintiff and against plaintiff and defendant and surety for claims of materialmen brought in, failure of judgment to provide for deducting amount allowed materialmen from judgment against defendant *held* not to affect any substantial right of defendant, in that, if plaintiff should attempt to collect full amount, defendant or surety could protect themselves by paying into court amount adjudged due for labor and material.

**6. Contracts ⬅176(9)—Issue of whether drawing attached to contract constituted representation as to depth of bedrock held for jury under conflicting evidence.**

Where contract for construction of bridge was not such that court without aid of extrinsic evidence could say that lines and figures on drawing attached thereto were tantamount to positive assertion or representation that bedrock would be found at given depth, and testimony adduced in aid of construction was conflicting, the issue as to whether such lines and figures constituted positive assertion as to depth of bedrock and representation on which subcontractor had right to rely without investigation should have been submitted to jury.

Gilbert, Circuit Judge, dissenting.

In Error to and Appeal from the District Court of the United States for the District of Arizona; F. C. Jacobs, Judge.

Action by L. De Waard and others against the Phœnix Tempe Stone Company, wherein the Standard Accident Insurance Company was made party defendant by cross-complaint, and certain lien claimants were brought in for determination of amount due, and, on motion of one of material lien claimants, the Maryland Casualty Company was also made party defendant. Judgment for plaintiffs, and defendant and the Maryland Casualty Company bring error, and the

Standard Accident & Insurance Company separately appeals. Reversed.

The defendants in error, herein to be named the plaintiffs, were subcontractors under the Phœnix Tempe Stone Company, and they brought an action for damages against that company, alleging that it had breached its contract with them. The company answered, denying that allegation, and it filed a cross-complaint, alleging that the plaintiffs had failed to perform the subcontract and had left unpaid a large number of bills for labor and materials, for which the general contractor and its surety, the Maryland Casualty Company, were secondarily liable on the general contractor's bond, and praying that certain lien claimants be brought into the suit for the determination of the amount due to each of them, and that the Standard Accident Insurance Company, the surety for the performance of the subcontract, be also brought in as a party defendant. The cross-complaint demanded judgment against the plaintiffs and the Standard Accident Insurance Company for the loss sustained by the general contractor from their failure to complete the contract, and for the labor bills which it had paid, and the bills for materials which it was under obligation to pay. The additional parties were brought in. On the motion of one of the material lien claimants the Maryland Casualty Company was also brought in as a party defendant. The issues between the plaintiffs and the general contractor, hereinafter called the defendant, as to the alleged breach of contract and the damages resulting therefrom, were submitted to a jury, and they returned a verdict for the plaintiffs in the sum of $16,500. Judgment was rendered in accordance with the verdict, and the equitable issues in the case were disposed of the court by a general decree, the particulars of which are not essential to the controversy which is brought here by writ of error and appeal.

In the subcontract was included the construction of the Kirkland creek bridge. The complaint alleged that the plans and specifications called for the construction of piers to support the bridge and specified the rock elevation on which they were to be placed; that the rock elevation as shown by the plans was incorrect; that the plaintiffs found that it would be necessary to excavate to a greater depth than shown on the plans in order to find a foundation for the rock piers; that they notified the defendant that it would require additional equipment, labor, and cost to excavate to such greater depth, and that such work and equipment should be authorized under the extra work provision of the contract; that the defendant ignored such notice, and on October 22d informed the plaintiffs that the state engineer required the excavation to be carried to bedrock, and that said work should be done at the same unit price as for the excavation, as shown on the plans and specifications, and that no provision would be made for payment of extra work or extra expense in making such excavation; that the plaintiffs notified the defendant that it would be impossible for them to comply with that request; that the latter at no time authorized or requested the plaintiff to continue the excavation as extra work, nor did it secure authorization from the state engineer for such extra work. The complaint alleged that the ground line of the plans for the Kirkland creek bridge was incorrect, in that it was shown thereon at about 10 feet above the actual ground line at the wing walls. The complaint set forth the damages for which judgment was demanded.

Sloan, Holton, McKesson & Scott, of Phœnix, Ariz., for appellant Standard Accident Insurance Co.

Kibbey, Bennett, Gust, Smith & Lyman, of Phœnix, Ariz., for plaintiffs in error Phœnix Tempe Stone Co. and Maryland Casualty Co.

Norris, Norris & Flynn, of Prescott, Ariz., for defendants in error.

Cooney & Kelley, of Los Angeles, Cal., for defendant in error Union Oil Co. of Arizona.

A. H. Favour and A. G. Baker, both of Prescott, Ariz., for appellee L. J. Haselfeld.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1, 2] The defendant contends that the plaintiffs' complaint fails to state a cause of action, that the demurrer thereto should have been sustained, and it argues that, although the complaint alleges certain breaches of the subcontract in connection with the extra work claimed to have been performed by the plaintiffs, the facts thereafter pleaded show that the plaintiffs waived any prior breach on the part of the defendant. It is true that the complaint indicates that after the alleged breaches negotiations were continued between the parties with a view to complete performance, but it also shows that the defendant, after refusing to pay for the extra work, notified the plain-

tiffs that it was going to take over and perform the contract itself. The case stated is not, therefore, one of a subcontractor abandoning the work on the failure of the contractor to pay an installment due under the contract. The facts pleaded bring the case within the rule that, where an act of the defendant renders complete performance of the contract impossible, the plaintiff may treat the act as a discharge from further performance, and may claim compensation for what has been done, and the damages which have been sustained. 3 Elliott on Contracts, 218; United States v. Behan, 110 U. S. 338, 4 S. Ct. 81, 28 L. Ed. 168. The case of Greenlee County v. Cotey, 17 Ariz. 542, 155 P. 302, relied upon by the defendant, is not authority to the contrary.

Error is assigned to certain instructions to the jury concerning the question of the conflict between the line of bedrock as shown by the plans and specifications, and the line thereof as it was proven actually to have existed, and the extra work which the plaintiffs contended that they were required to perform in addition to that shown by the plans and specifications. The court charged that the plans and specifications were a part of the contract, and that they specified the depth at which bedrock would be found, and amounted to a positive statement, which must be taken as true and binding upon the defendant; that the provision in the contract that the cylinders should be sunk to bedrock did not take precedence over the plans which showed the depth at which bedrock would be encountered; that under the contract the defendant had no right to require the plaintiffs to do extra work without written authorization therefor by the state engineer; that under the provision of the contract "that the contractor has by careful examination satisfied himself as to the intent of the specifications and plans," etc., the plaintiffs were not required to make an independent investigation to determine whether or not bedrock was to be found at the depth shown; and that the delineation of the line of bedrock constituted a representation upon which the plaintiffs had the right to rely without investigation.

We find no error in those instructions. Hollerbach v. United States, 233 U. S. 165, 34 S. Ct. 553, 58 L. Ed. 898; Christie v. United States, 237 U. S. 234, 35 S. Ct. 565, 59 L. Ed. 933; United States v. Spearin, 248 U. S. 132, 137, 39 S. Ct. 59, 63 L. Ed. 166. In the case last cited the court said: "But the insertion of the articles prescribing the character, dimensions, and location of the sewer imported a warranty that, if the specifications were complied with, the sewer would be adequate. This implied warranty is not overcome by the general clauses requiring the contractor to examine the site, to check up the plans, and to assume responsibility for the work until completion and acceptance." In United Const. Co. v. Town of Haverhill, N. H. (C. C. A.) 9 F.(2d) 538, it was held that, if the plans and specifications for a bridge were a representation as to the character of the foundation at a depth specified therein, the contractor was excused by misrepresentation from performance of its promise to excavate to a solid ledge. The responsibility of the defendant was not overcome by the failure of the plaintiffs to inform themselves of the actual conditions, where those conditions differed materially from the requirements of the plans and specifications. Spearin v. United States, 248 U. S. 132, 136, 39 S. Ct. 59, 63 L. Ed. 166. The case is not one of those in which the plans and specifications are not intended to show the facts, leaving the bidder to ascertain for himself the nature and quantity of the work contemplated. Here there was nothing to give the plaintiffs warning that the plans might not be accurate, and nothing to advise them that the representations made thereby were not intended to amount to a guaranty upon which they might make their bids. It is doubtless true, as one of the plaintiffs testified, that "no contractor in the world" can be found who will make a bid on a bridge that does not show the depth of the foundation.

The writer hereof submits that the view of the majority of the court on the foregoing feature of the case ignores the theory on which the case was tried in the court below. The defendant made no contention that the question was one for the jury. Its position throughout the trial was that the question was one of law. It took no exception to the court's instructions on the ground that it should have been submitted to the jury, and it made no request that it be submitted to the jury. The sole ground of its exception was that it was not a fact that the plans showed the depth at which bedrock would be found, "and for the further reason that the true construction of the special provision is that the cylinders must be sunk to the actual bedrock and not to a bedrock assumed to exist by the plans." Again it said: "The plans received in evidence in the cause do not show any definite line for bedrock for the bottom

of the cylinders, and for that reason the plaintiffs were obliged to put the cylinders down to actual bedrock at all events." In brief, the only exception they took to the instruction was an unsustainable one.

[3, 4] The defendant contends that it was entitled to an instructed verdict on the ground that, if any breaches of the contract were made by the defendant through its failure to obtain authority for the extra work, the plaintiffs thereafter elected to proceed with the contract, and thereby they waived said breaches, and their subsequent failure to carry on the work with sufficient dispatch gave the defendant the right to take over the completion thereof. The contention assumes as a conclusion of law that there was a waiver. To this it is to be said that whether in any case there has been a waiver is generally a question of fact, and the sufficiency of the evidence to establish it is for the jury. 12 R. C. L. 912. There is lack of evidence here to show a waiver. When the plaintiffs on October 4, 1924, wrote to the defendant, directing its attention to the extra work which confronted them, it is obvious that they hoped for an amicable adjustment of the difficulty, and the record shows that the matter was the subject of negotiation for several weeks thereafter. On October 18, 1924, the plaintiffs again wrote, directing the defendant's attention to the extra work rendered · necessary by the misrepresentation found in the plans, and expressing the hope that the defendant could make arrangement with the highway engineer for an allowance for extra work. On November 6, 1924, the defendant wrote to the plaintiffs, encouraging them to believe that the state engineer would accede to their request. And, finally, on December 20, 1924, when the plaintiffs wrote to the defendant: "Unless you are willing to assure us that we may proceed upon this work, as extra work, at the price specified in our contract, we cannot perform it. * * * The delay has been caused by your neglect to authorize us to proceed with the extra work"—it would seem that they were justified in concluding that further efforts to effect an adjustment would be futile. It is not proof of a waiver that the plaintiffs refused to turn over the work to the defendant in answer to a demand based, as it was, upon the assumption that they had breached the contract.

[5] The judgment entry, after awarding judgment in favor of the plaintiffs and against the defendant for $16,500 and costs, awarded judgment against both the plaintiffs and the defendant and their respective sureties for claims of materialmen and for labor aggregating about $8,000. The defendant admits that the sums so awarded for labor and material were justly due, but contends that the entry should have provided that, if the plaintiffs and their surety did not pay those claims within a period to be named, the amount thereof should be deducted from the judgment which they should obtain against the defendant, the obligation to pay the claims being primarily that of the plaintiffs. No objection, however, was presented in the court below to the form of the judgment. It is not perceived that any substantial right of the defendant is affected by the entry which was made. If the plaintiffs should attempt to collect the full amount of $16,500 from the defendant or its surety, the latter may protect themselves against paying the whole thereof to the plaintiffs by paying into court the amount adjudged to be due for material and labor.

Error is assigned to the admission in evidence of the telegram sent September 18, 1924, by the plaintiffs to their superintendent, saying: "Do not sink cylinders deeper than elevation shown on plans. Letter follows." The defendant's objection to the telegram was that it was self-serving and immaterial. Whether it was properly admissible in evidence, or not, its admission could not have prejudiced the defendant. The court had ruled, and it was in evidence, that the plans and specifications themselves showed the line of bedrock upon which the cylinders were to rest. Even the witnesses for the defendant testified that the map indicated that bedrock would be approximately along that line. The telegram added nothing to the evidence against the defendant.

The Standard Accident Insurance Company was the only party to the suit to make objection in the court below to the bringing in of the materialmen and the labor claimants, and the adjudication of their claims. It appeals from the judgment and assigns as error that judgment was entered against it for the benefit of those claimants, whereas it urges that its liability on its bond is limited to indemnifying the defendant for loss sustained by it through the failure of the plaintiffs to pay off those claims; it appearing from the pleadings that no such loss or liability had been sustained. The insurance company was brought into the suit as a party defendant upon the cross-complaint of the defendant against the plaintiffs. It is not shown that its rights have been prejudiced

by the proceedings in the court below, or that it was not a proper party thereto, notwithstanding that it was not alleged in the pleadings, nor shown in the proof, that the defendant had theretofore been required to pay any of the claims.

It is the opinion of the writer hereof that there was no error, and that the judgment should be affirmed.

DIETRICH, Circuit Judge. The issues are sufficiently explained in Judge GILBERT'S preliminary statement of the case. Perhaps the most serious question arises out of the construction placed upon the contract by the lower court, as exemplified in the instructions to the jury respecting the elevation of the bedrock upon which all parties agree the piers were to rest. Directly in words, the contract is silent upon the subject, and primarily the issue turns upon the meaning to be attached to a certain drawing made a part of the contract, and exhibiting the down stream elevation of the projected bridge structure. Before advertising for bids, the state engineer had caused three test pits to be sunk, one near each end of the bridge site and the other near the middle. These pits, approximately six feet in diameter, he dug to the water table, and then with a device making a hole approximately an inch in diameter he went down until he struck something solid, which he assumed to be the bedrock. Upon the drawing in question, the bottoms of these test pits, as reached by the drill, are shown by small patches of hatched lines, and each end hatching is connected with the middle one by a straight, but broken, line. There is no legend or descriptive words or figures, upon the drawing or in the contract, explaining what the line is intended to represent. Realizing that without the aid of extrinsic evidence the drawing could not be interpreted as having the significance they desired to have given to it, the plaintiffs adduced the testimony of engineers and contractors tending to show that, as understood in construction work, both the hatchings and the connecting broken lines constitute a positive representation of the elevation of the bedrock. From similar sources, defendant introduced testimony measurably conflicting with that of plaintiffs. The court declined to submit the question to the jury, and instructed them "that the plans and specifications, which are a part of the contract, * * * specify the depth at which bedrock will be found. * * * This is a positive statement of the plans and specifications, and must be taken as true and binding. * * * "

Referring to the provision in the contract requiring the plaintiffs to sink the cylinders to bedrock, irrespective of what depth it was necessary to go, the court declared that it did not affect plaintiffs' rights, and that "the plans show the depth at which bedrock would be found, and there is nothing in the special provision to indicate that it would be found at any deeper depth." Other references were made to the "bedrock elevation shown on the plans," and finally, after quoting from the specifications the provision, "It is understood and agreed that the contractor has by careful examination satisfied himself as to * * * the intent of these specifications, the detail of the plans, the nature of the work, the conformation of the ground, the character of the material to be encountered, and the quantities as shown on the plans, profiles, and cross-sections are approximate only," the court said: "I instruct you that under this clause the plaintiff would not be required to make an independent investigation to determine whether or not bedrock was to be found at the depth shown on the plan. If the state wished to leave the matter open to the independent investigation of bidders, it might easily have omitted the figures and line on the plans as to the depth at which bedrock would be encountered, but the positive assertion as to the depth of bedrock made a representation upon which plaintiff had a right to rely without an investigation to prove its falsity."

[6] In this view we think there was error. Certainly, without the aid of extrinsic evidence, a court could not say that the line and figures upon the drawing in question are tantamount to a positive assertion or representation that the bedrock would be found at a given depth, and the testimony adduced in aid of construction was sufficiently diverse and conflicting to require submission of the issue to the jury. Indeed, when analyzed, it is found that substantially none of the testimony, even for the plaintiffs, is to the effect that bidders would construe the contract and plans as representing or warranting that the elevation would be found on the plane of the broken line; the view most favorable to plaintiffs being that such line would be understood by bidders as approximating the bed rock elevation. Under the evidence the issue should have gone to the jury under an instruction substantially of the following import:

Under the express terms of the contract,

the cylinders were to rest upon bedrock, and in carrying out the contract it was the duty of the plaintiffs so to place them. Upon that point there is no dispute between the parties. The real controversy is whether or not by its contract the state, and hence by its contract with the plaintiffs, which incorporated the state contract, the defendant, made representations respecting the depth of the bedrock, which constituted a warranty by it upon which the plaintiffs had the right to and did reasonably rely. Plaintiffs were to be paid, not a lump sum for each cylinder, but at a stipulated rate per linear foot, so that depth is material only in case of substantial increase or decrease of construction cost. They contend that there was such a warranty of depth; that, as actually found, the bedrock, though at some points higher, was at other points much deeper than it was represented to be; and that for this additional depth construction was substantially more expensive, entitling them to a higher rate, as for extra work.

There is no stipulation or phraseology in the contract proper or in the specifications respecting the elevation of the bottom of the cylinders or of the bedrock, and plaintiffs rely exclusively upon certain lines and figures exhibited upon one of the drawings or diagrams attached to the contract, particularly a broken line on exhibit numbered 53, connecting hatchings at the three points where test pits had been sunk. Where a contract is written in words of common use and is free from ambiguity, it is for the court without testimony to declare its meaning, and for the jury to accept the construction put upon it by the court. But where technical terms of science, art, or trade are employed, or common words are used in an unusual sense, or where—as here—symbols, lines, or marks are used, the significance of which is not commonly understood, testimony may be received from persons familiar with such use to explain the meaning, and if the testimony is conflicting it is for the jury in the light of the testimony to determine the real understanding and agreement of the contracting parties. Having in mind this principle, both parties here produced as witnesses engineers and contractors to testify touching the significance of the lines and symbols in question, and, their testimony being measurably conflicting, the question is submitted to you.

It is not contended by the plaintiffs that the state or the defendant in fact knew the elevation of the bedrock at any points other than the three places where test pits were sunk, or that they withheld from plaintiffs any facts pertaining thereto within their knowledge, or willfully or fraudulently made any misrepresentations of fact, but only by putting on the drawing the broken line referred to they agreed that in making their bid plaintiffs should assume that such was the elevation. If, from the testimony before you, given by those engaged in that line of work and having experience in reading and interpreting plans and drawings, you believe that the broken line, considered together with the other lines, figures, and marks upon the drawings, and all the provisions of the contract and specifications, was in good faith and reasonably so understood by plaintiffs, then it would be your duty so to construe the contract, and to hold that for sinking the cylinders below the line plaintiffs were entitled to receive such additional compensation as would represent the difference between the cost of doing the work below the line and the cost above the line, and further that, if such difference in cost was substantial, plaintiffs were not bound to proceed without appropriate authorization, as provided in the contract, for extra work.

If, on the other hand, you believe from the testimony that, knowing as they did that neither the state nor the defendant had any information touching the elevation of the bedrock other than such as was disclosed upon the surface of the ground and in the three test pits, all of which was available to them, the plaintiffs realized or reasonably should have realized that the broken line could represent nothing more than a prophecy or the judgment of the state engineer and the defendant as to approximately where the bedrock would, in the progress of the work, probably be found, and understood, or reasonably should have understood, that the line was intended as nothing more than an expression of such judgment or prophecy, and was not intended as a positive representation or warranty that the bedrock would be found at the elevation of such line, then you should hold that the plaintiffs were not justified in demanding additional compensation, or in declining to proceed until provision was made for paying such compensation.

In deciding this issue, and getting at the real intent and understanding of the parties, you should consider, not only the testimony of the witnesses respecting the significance of the drawings and the lines and marks thereon, but the surrounding circumstances

in evidence, and all the provisions of the contract and specifications, inclusive of the express statement in the specifications that "it is understood and agreed that the contractor has by careful examination satisfied himself as to * * * the intent of these specifications, the detail of the plans, the nature of the work, the conformation of the ground, the character of the material to be encountered, and the quantities as shown on the plans, profiles, and cross-sections · are approximate only."

While this provision would not be binding on the plaintiffs to the extent of defeating the right to recover, if in fact defendant warranted that the bedrock would be found at the elevation of the broken line, you may consider it, together with the fact that defendant had no information other than that which was available to the plaintiffs, in determining whether in truth they understood the line to be a warranty of the exact elevation of the bedrock, or only an expression of opinion upon the probability of its approximate location.

Upon this ground the judgment must be reversed. We find no other prejudicial error, and in all other respects we concur in the conclusions of Judge GILBERT. Costs to plaintiffs in error.

RUDKIN, Circuit Judge, concurs with DIETRICH, Circuit Judge.