254 P.2d 440

**SPITALNY et ux. v. TANNER CONST. CO.**

No. 5637.

Supreme Court of Arizona.

March 9, 1953.

Leslie C. Hardy, of Phoenix, for appellants.

Robert & Price, of Phoenix, for appellee.

PHELPS, Justice.

This is an action by Tanner Construction Company, a corporation, plaintiff-appellee, versus Sam Spitalny and wife, defendants-appellants, for the recovery of the reasonable value of services rendered defendants by plaintiff in leveling certain land for them near Blythe, California, in 1948. Judgment was rendered for plaintiff and defendants appeal. The parties will be referred to hereafter as plaintiff and defendants respectively.

The facts are that defendants were the owners of certain desert land located near Blythe, California, lying within the Palo Verde Irrigation District. Plaintiff Tanner Construction Company was engaged in highway construction and in leveling land for agricultural purposes and possessed adequate equipment for the conduct of such business. The corporation was licensed to do business in the states of Arizona and California.

In February 1948 plaintiff and defendants entered into a written contract whereby plaintiff agreed to *level* a 40-acre tract of defendants' land located in section 24, Riverside County, California, and to employ in doing such work one D–8 tractor with bulldozer fully operated and maintained at a charge of $10 per hour, and two D–8 tractors wtth 20-yard carry-alls at a cost of $11 each per hour. Defendants under the terms of the contract were to furnish all grade stakes of cuts and fills for all clearing done in advance and pay plaintiff for its work every 15 days from the day work started. Plaintiff agreed to begin work not later than February 10 of that year.

Plaintiff leveled the 40 acres and was paid in full therefor. Defendants were pleased with the work and suggested to plaintiff that they extend the terms of the written agreement to cover other land belonging to defendants in that area to which plaintiff assented. Plaintiff proceeded to level other land for defendants under such oral agreement.

Plaintiff next leveled a 14-acre tract adjoining the 40 acres above mentioned and upon completion of the work upon the 14-acre tract plaintiff was directed to next level a 55-acre tract which it did "fairly well" according to the testimony of Mr. Spitalny with the exception of perhaps "a

little touching-up" which he stated was "a minor operation."

The fourth tract upon which plaintiff worked had 62 acres in it and was also in section 24. The portion plaintiff attempted to level contained only 42 acres, however. This tract was never completely leveled. This was admitted by both R. C. Tanner and Lyle Fisher, his foreman in charge of the work. The portion thereof which was not finished consisted of a strip along the north side of the 42-acre tract consisting of two to two and a half acres, a part of which was approximately two feet higher than the remainder of the tract.

According to the testimony of plaintiff's witnesses who were employed in the engineering office of the Palo Verde Irrigation District each of these tracts of land were balanced so that the cuts approximately equaled the fills. In other words, so that the high places when cut down to the proper level as indicated by the stakes placed thereon by the engineering department of the irrigation district, the dirt removed therefrom was sufficient to fill the low places in the tract to the same level. Defendant Spitalny and his witness C. E. Thacker who did a great deal of leveling for Mr. Spitalny testified that this surplusage of soil on the north end of the 42-acre tract was due to plaintiff's failure to follow the survey made by the engineers of the irrigation district, that instead of doing so, plaintiff hauled dirt from an 80-acre tract belonging to defendants adjoining the 42 acres on the south and filled up a low corner on the south side of the 42-acre tract. Defendants claimed this was done to save the long haul from the high strip on the north side of the tract. Plaintiff R. C. Tanner and his foreman Lyle Fisher denied that any dirt was hauled on to the 42-acre tract from the 80 acres south thereof or from any other tract. Defendant Spitalny also testified that in removing the dirt from the adjoining lands, plaintiff dug a hole in the 80-acre tract covering approximately 10 acres one and one-half to two and a half feet in depth. In this he was also supported by the witness Thacker who testified that he saw plaintiff's employees at different times removing dirt from the hole and conveying it to the 42-acre tract. Spitalny and Thacker testified that it cost defendants approximately $10,000 to fill the hole from which they claimed plaintiff had removed the dirt on the 80-acre tract. Defendants claimed that they employed Thacker and Waldron to cut down the high strip on the north side of the tract and distribute it over the remainder of the 42 acres raising the level thereof five to six inches at a cost of $3000, but the evidence is indefinite as to the cost of doing this.

Plaintiff had begun work on the 80-acre tract south of the 42 acres above mentioned and had removed some of the brush and was leveling 20 acres thereof by cut and fill work when it withdrew its equipment from the job and rescinded the contract be-

cause of defendants' failure to pay in accordance with its terms.

The evidence shows that plaintiff began work around February 14 and that defendants made their first payment to plaintiff on March 6, 1948 in the sum of $3000. The next payment was on March 31 in the sum of $2,652. These two payments constituted payment in full for leveling the first 40-acre tract. The next payment was made by defendants on April 20 in the sum of $2500. At that time, before the $2500 payment was credited by plaintiff, defendants were indebted to plaintiff in the sum of $6,615.73. The next payment made by defendants was on May 17 in the sum of $5000 and left a balance of some $6000 unpaid. At that time plaintiff informed defendants that he expected the whole indebtedness to be paid and was informed by defendant Sam Spitalny that he would bring him a check within a few days. No check having been received by plaintiff previous to July 1, plaintiff on that date telephoned defendants at their home and informed Mrs. Spitalny that it was short of funds and unless further payments were made it could not continue the work but that it would give defendants ten days more and if payments were not made by that time plaintiff would take its equipment off the work. The notice given cures any previous waiver by plaintiff of payment on the date provided in the contract. No payments were made by defendants.

At the time plaintiff quit work on defendants' land and withdrew its equipment to Phoenix it had neither finished leveling the 42-acre tract according to survey lines of the irrigation district engineers nor had it completed leveling the 20 acres it had begun on the 80-acre tract. Plaintiff sent statements to defendants for the balance due amounting to $11,094.73 on a number of different occasions between the time it rescinded its contract with defendants and the date of the institution of this action.

Plaintiff in instituting its suit against defendants declared in its first count upon the written contract, and in the second count it set up the written contract haec verba but based its claim upon quantum meruit. The defendants answered the complaint and filed a counter-claim asking for damages against plaintiff, for loss of crops because of plaintiff's failure to level the land according to contract; for cost of finishing leveling such land and for filling the 10-acre hole on an adjoining tract made by plaintiff in leveling the 42-acre tract. During the course of the trial plaintiff dismissed its first cause of action and we are therefore concerned only with the second cause of action in quantum meruit.

Issues were formed on defendants' counter-claim which were submitted to the jury on proper instructions and were determined adversely to defendants and in favor of plaintiff, upon which judgment was entered and no appeal taken therefrom.

196

Defendants have presented eight assignments of error, seven of which are predicated in whole or in part upon the proposition that plaintiff could not recover on quantum meruit under the pleadings where plaintiff and defendants had entered into a specific written contract to level certain lands belonging to defendants and plaintiff had admitted that it had failed to perform such written contract, it being the position of defendants that before plaintiff could maintain an action in quantum meruit under such circumstances he must fully perform his part of the written contract. Defendants further contend that plaintiff did not have the right under the law to prove the reasonable value of the services rendered by it to defendants based upon the amount agreed upon in the written contract.

Plaintiff contends that it plead and introduced the contract in evidence to establish the relation between the parties and in order that the court and jury could determine if such contract had been breached; that if it had been breached and rescinded it then ceased to exist and quantum meruit was the proper remedy and that it did produce evidence independently of the contract of the reasonable value of the services rendered.

This court has had the same question before it in several cases and it is therefore not necessary to look beyond this jurisdiction for an answer to the questions presented.

We first had the question before us in the case of Southwestern Fruit & Irrigation Co. v. Cameron, 16 Ariz. 87, 141 P. 572. In that case Cameron entered into a written agreement with the corporation for the repair of a portion of its canal for the sum of $5000. Cameron brought an action against defendant corporation in two counts, the first upon the written contract and the second, in quantum meruit. In the first cause of action he alleged full performance of the written contract. We said in that opinion that Cameron evidently failed to prove full performance as the trial court allowed him only $1000 whereas if he had fully performed, he was entitled to in excess of $3000. It was further stated in that case that the trial court had evidently based its judgment on the quantum meruit count and in that event the reasonable value of the services rendered was the measure of recovery and not the amount named in the contract. The court further said that where there is no dispute as to the manner and sufficiency of the performance by the plaintiff that the amount named in the contract would be a fair measure of the value of the services rendered and properly considered as such by the court.

The next case was Greenlee County v. Cotey, 17 Ariz. 542, 155 P. 302. Cotey entered into a written contract with Greenlee County in 1914 to build an extension of the Metcalf Road at the price agreed upon therein. The county was to furnish estimates each month of the work done by

Cotey and to pay him 75% thereof at the expiration of the month; that it did this in May but refused either to make an estimate or pay the amount due for the month of June. Cotey rescinded the contract, filed his claim for the full contract price including profits and upon refusal of the county to pay, brought an action upon the written contract. In his complaint he admitted he had not fully performed his part of the contract.

The court said that when the county failed to furnish the June estimate and pay Cotey 75% thereof it breached its contract with him and said in substance that Cotey had the following remedies open to him as a result of such breach: he could rescind his contract with the county and sue in quantum meruit for the reasonable value of the services rendered or he could maintain an action in damages for the breach of the contract.

The court held that Cotey, having sought recovery of the full amount named in the contract for the construction of the road together with profits and having admitted his failure to fully perform such contract, he was not entitled to the relief sought.

In the case of Cotey v. Greenlee County, 20 Ariz. 150, 178 P. 25, 26, Cotey again sought recovery of his claim and in his complaint set up two counts, the first on the contract as in the original suit above mentioned, and second, on quantum meruit. The trial court sustained a demurrer to the first count leaving only the action in quantum meruit before it. Cotey introduced no evidence of the reasonable value of the work he had done on the road but submitted only the terms of the contract for consideration of the court in arriving at its judgment. In other words, he failed to prove the allegations of his complaint. A statement to that effect by the supreme court was all that was necessary to affirm the judgment of the trial court. Instead, however, the court said with reference thereto:

"* * * Before he [Cotey] can recover reasonable value of the work done, the material furnished, and other valuable service rendered the county, the facts must appear that a valid contract was entered into, that the beneficial service was performed and the material furnished pursuant to the terms of said contract, that the contract relation ceased before its terms were fully performed, and that the plaintiff was not at fault in terminating said contract relation."

The court further said:

"* * * The plaintiff cannot recover, either on the contract or for the reasonable value of the work done and material furnished, when he has admitted that he has not performed the contract, unless he can show that substantial performance was prevented by Greenlee county, or by some cause recognized as superior to human endeavor. The plaintiff has failed to show any legal excuse for abandoning his special

contract, and therefore has failed to establish any right to recover for the reasonable value of labor performed, material furnished, etc., claimed in the second count of his complaint."

The above quotations, aside from being dicta in their entirety, expressly refute the court's pronouncement in the previous Cotey case (Greenlee County v. Cotey,) 17 Ariz. 542, 155 P. 302, 304, supra, to the effect that:

"Clearly defendant's alleged failure to estimate the work and pay therefor in accordance with its obligation would have the legal effect of a breach and mark a termination of the contract, unless such failure is waived by the plaintiff. If such failure be waived by the plaintiff, then such matter must be treated by plaintiff as if it never existed, and plaintiff must so treat such delinquency in order to keep the contract open, and he must perform his duty under the contract to completion without regard to defendant's failure. To treat such breach of duty by defendant as an excuse for abandoning the construction work is to give effect to the breach as ending the contractual relations by terminating the contract. If so treated, the breach is not waived, and the contract is at an end, and it is not open for any purpose; it is not open for performance on the part of either party, nor can the party injured and claiming rights arising from such

wrong base an action upon the contract and claim the right to recover as for full performance, for the reason the other party is guilty of conduct which terminated the special contract sued upon and plaintiff acquiesced therein. * * *

" * * * By electing to perform no further plaintiff could not hold the defendant to further performance, and his remedy for relief for injury suffered lay in an action for the reasonable value of the work and material actually done and furnished, as if done and furnished upon an implied promise which the law raises in such case; or in an action for damages upon the breach of the contract."

It is upon the language found in the portion of the second Cotey case, 20 Ariz. 150, 178 P. 25, 26, supra, reading as follows, that the defendant relies as his defense in this case:

" * * * The plaintiff cannot recover, either on the contract or for the reasonable value of the work done and material furnished, when he has admitted that he has not performed the contract, unless he can show that substantial performance was prevented by Greenlee county, or by some cause recognized as superior to human endeavor. * * *"

The next case bearing upon the right of a plaintiff under the circumstances such

as are found in this case is Pleasant v. Arizona Storage & Distributing Co., 34 Ariz. 68, 267 P. 794. The facts are, briefly, that Carl Pleasant had entered into a contract for the construction of the Carl Pleasant Dam on the Agua Fria River and entered into a written contract with the appellee to haul certain material for defendants at a specific price named therein per ton mile. Differences arose between the parties as to whether appellee was hauling this material between April 20 and July 25 under an oral contract claimed by plaintiffs to have been made with defendants contemporaneously with the written agreement which postponed the effective date of the written agreement until certain road repair work was done by defendants and changed the rate of pay to an hourly basis or whether it was hauling it under the written contract on a per ton mile basis.

Under the oral contract the appellee would have been entitled to a much larger sum of money for the work performed during that period than under the written contract. It made demand upon Carl Pleasant for the amount due under the oral contract and he tendered the amount due under the written contract. The court held that the oral contract was not enforceable but nevertheless held that this was not a good tender because its acceptance required the appellee to surrender a valuable legal right which was in the nature of a compromise of his claim and by which he would be bound.

The trial court in the latter case gave the following instruction:

"The court instructs the jury that it is admitted by the parties hereto that the plaintiff did work for the defendants under the written contract of April 19, 1926, during the month of August, 1926; that on or about the 1st day of September, 1926, the plaintiff presented to the defendants a bill claiming that it covered such work. It is admitted in evidence also that said bill for August hauling, or any part thereof, was not paid, but it is claimed by the defendants that they tendered the amount due on said bill by check on or about the 5th day of September, 1926.

"The court instructs the jury as a matter of law that said tender was a conditional one and therefore not the equivalent of payment under the contract, and that the plaintiff had thereupon a right to terminate the contract and to rescind the same, and is therefore entitled to recover from the defendants the reasonable value of the work done by it for which it has not been paid from and after July 24, 1926, to and including the 11th day of September, 1926."

The court said in its opinion that this was a correct instruction of the law of the case. It further said:

"This cause of action was based on the theory that, while it was admitted

during the period covered therein plaintiff was working under the written contract above referred to, defendants breached the contract by failing to make payment for the work thus done, so that plaintiff on the 11th day of September had the legal right to, and did, terminate the contract, and brought suit on quantum meruit for the work performed during that period.

"It is of course true that if, as a matter of fact, defendants failed to make the payments provided for by the contract, or a valid tender thereof, plaintiff had the right to terminate the contract, and, in suing for the value of the services already performed, quantum meruit was the proper form of action. * * *" Citing the first Cotey case in 17 Ariz. 542, 155 P. 302, supra.

This is a complete repudiation of the language used in the second Cotey case found in 20 Ariz. 150, 178 P. 25, supra, to the effect that the plaintiff must first complete his contract before quantum meruit is available to him.

■ In this case plaintiff's claim is based not upon a lump sum for the leveling of any specified acreage but upon a specific charge per hour for the use of his machinery in the leveling of defendants' land. That the machinery worked the number of hours upon which the amount is based is not questioned by defendants nor have they denied that, at the rate provided under the contract, the amount claimed was due plaintiff from defendants. Defendants contend however that plaintiff has not proved the reasonable value of the services rendered and has relied exclusively upon the terms of the contract. We cannot agree with this contention. Both R. C. Tanner, who certainly was in a position to testify as to the reasonable value of the use of the machinery such as he had in operation on defendants' land as well as to the value of the services rendered, and Robert H. Markham who is in the general contracting business under the name of Phoenix, Tempe Stone Company and engaged in road building, earth moving, etc., testified that the amount charged per hour by plaintiff for the use of such machinery was reasonable and that the services rendered to the defendants was of the reasonable value charged.

■ We agree with defendants that the measure of the value of the services rendered must be the value to the defendants, not the cost to the plaintiff in performing such services. There is nothing in the evidence, however, to show that the value of the services to defendants was not equal to the amount of the claim of plaintiff. In fact defendant Sam Spitalny testified in substance that he was satisfied with the services rendered up to the date plaintiff withdrew his machinery from the job with the exception of digging the 10-acre hole in the 80-acre tract and the failure to prop-

erly level the 42-acre tract. The jury resolved that issue against him in denying him damages on his counterclaim.

There is only one other question left for determination and that is defendants' assignment No. 8 in which he says the court erred in allowing interest on the judgment from July 10, 1948, the date of the abandonment of the written contract. We think that this is error under the rule laid down in County of Greenlee v. Webster, 30 Ariz. 245, 246 P. 543, 545. In that case this question was raised and the court said:

"Finally, complaint is made of the allowance of interest on the amount of the judgment from the date of filing the first demand against the county, June 7, 1920, it being contended that plaintiffs' demand was unliquidated, and on such demands interest can be charged only from date of judgment. Whatever the rule in other jurisdictions, this court has adopted the rule of allowing interest upon unliquidated demands 'from the time of the commencement of the action.'" Citing U. S. Fidelity, etc., v. California-Arizona Const. Co., 21 Ariz. 172, 186 P. 502.

The judgment of the lower court is affirmed with the modification that it is to bear interest only from the date of the commencement of this cause of action.

STANFORD, C. J., and LA PRADE, UDALL and WINDES, JJ., concur.